COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton,* Judges Frank and Clements
Argued at Chesapeake, Virginia


STEPHEN A. PALMER
                                                              OPINION BY
v.        Record No. 2546-05-1                        JUDGE ROBERT P. FRANK
                                                              APRIL 4, 2006
COMMONWEALTH OF VIRGINIA
  MARINE RESOURCES COMMISSION


                FROM THE CIRCUIT COURT OF MATHEWS COUNTY
                        Randolph T. West, Judge Designate

            Stephen A. Palmer, *pro se*.

            Carl Josephson, Senior Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


        Stephen A. Palmer, appellant, appeals a trial court decision holding that the Virginia

Marine Resources Commission (VMRC) had sufficient evidence to deny appellant's application

for a permit to construct a storage shed on his pier, located along West Landing Creek.  On

appeal, appellant contends that the VMRC erred in (1) finding that construction of the storage

shed violated the public trust doctrine, (2) finding that the storage shed was not water-dependent

and was not necessary for appellant's use of his pier, (3) finding that the storage shed had an

environmental impact on the subaqueous land of the Commonwealth, and (4) finding that the

storage shed interfered with the right of others to use and enjoy the subaqueous land of the

Commonwealth.  Additionally, appellant argues that the VMRC failed to review his application

within the time period prescribed by Code § 28.2-1205(D), thus requiring the automatic approval

of his application.  For the following reasons, we affirm the decision of the trial court.

_____

        * On April 1, 2006, Judge Felton succeeded Judge Fitzpatrick as chief judge.

BACKGROUND

The facts in this case are not in dispute.

On January 24, 2001, appellant submitted an application to the VMRC to construct a 134-foot long pier and an open-sided boathouse extending from his property into West Landing Creek.[1] The VMRC subsequently issued a "no-permit necessary" letter to appellant, noting that his application fell within the permit exemption provided by Code § 28.2-1203(A)(5).[2] Shortly after constructing this pier, appellant built a storage shed, measuring 11-feet long, 12-feet wide, and 12-feet high, on the end of his pier. Appellant used the shed to store an outboard boat motor, life jackets, fishing equipment, lawn chairs, toys for his grandchildren, and a small table. Appellant did not request a permit from the VMRC to construct this shed.

---

[1] Appellant did not build a boathouse as noted in his original application, but constructed only the pier.

[2] At the time of appellant's application, Code § 28.2-1203(A)(5) provided:

> It shall be unlawful for any person to build, dump, trespass or encroach upon or over, or take or use any materials from the beds of the bays, ocean, rivers, streams, or creeks which are the property of the Commonwealth, unless such act is performed pursuant to a permit issued by the Commission or is necessary for the following:

> \* \* \* \* \* \* \*

> Except as provided in subsection D of § 28.2-1205, placement of private piers for noncommercial purposes by owners of the riparian lands in the waters opposite those lands, provided that the piers do not extend beyond the navigation line or private pier lines established by the Commission or the United States Army Corps of Engineers. Subject to any applicable local ordinances, such piers may include an attached boat lift and an open-sided roof designed to shelter a single boat slip or boat lift. In cases in which such roofs will exceed 700 square feet in coverage, and in cases in which an adjoining property owner objects to a proposed roof structure, permits shall be required as provided in § 28.2-1204[.]

On February 19, 2002, VMRC staff members were notified that "a non-permitted structure" had been erected on appellant's pier.[3] After conducting a site visit to inspect the shed, the VMRC filed a sworn complaint and issued a "notice to comply" letter, sent to appellant on March 13, 2002. The "notice to comply" letter required that appellant either remove the shed or apply for an after-the-fact permit for the shed within 60 days. Appellant submitted an application for an after-the-fact permit on April 15, 2002.

Two people submitted written protests to the VMRC noting their objections to the construction of appellant's storage shed. One, a neighboring property owner, complained that the shed obstructed her views of the river and the bay, while the other, a local citizen responding to the public notice of the hearing, opposed the permit based on her personal impression that appellant deliberately ignored the permit requirement.

On October 22, 2002, the VMRC conducted a hearing to consider appellant's application for an after-the-fact permit for his storage shed. A VMRC staff member, Kevin Curling, presented evidence, including pictures of appellant's pier and storage shed, as well as the written protests submitted by the neighboring property owner and the local citizen. Curling recommended that the VMRC deny the permit application, based on his assessment that the storage shed was not a water-dependent structure and was not necessary to appellant's use of the pier. Curling noted that, while the shed was used to store some water-dependent articles, it could serve that same purpose if constructed on land near the pier entrance. Curling observed that moving the shed to land also reduced the threat of building materials entering the waterway during a storm.

At this hearing, appellant testified that he constructed the shed himself several months after the pier was built. He said that he did not seek a permit for the structure because he

---

[3] The record does not disclose how VMRC staff received this notification.

believed that building a shed was a "natural consequence" of being able to use his pier. Appellant stated that it would "not be convenient" for him to carry the items he stored in his shed down the length of his pier. Appellant also noted that a neighboring property owner approached him while he was building the shed and complained that it obstructed the view from her property. At the hearing, appellant agreed that his shed did obstruct that property owner's view of the water.

The VMRC voted 3-2 to deny appellant's application for an after-the-fact permit and ordered appellant to remove the shed within 30 days. One commission member, voting against the issuance of a permit, noted that the VMRC had recently denied a similar application and that future requests of this nature should also be denied. Another commissioner, who also voted against the issuance of a permit, observed that it was the "policy" of the VMRC on past applications to deny buildings similar to appellant's shed. Appellant appealed the VMRC decision to the Circuit Court of Mathews County pursuant to the Virginia Administrative Process Act (VAPA), Code § 2.2-4000, *et seq.*, arguing that the VMRC did not have sufficient evidence to deny his permit application. The trial court affirmed the VMRC denial.[4]

This appeal follows.

ANALYSIS

Appellant concedes that he was required to obtain a permit from the VMRC in order to construct a storage shed on his pier. See Evelyn v. Commonwealth Marine Res. Comm'n, 46 Va. App. 618, 621, 621 S.E.2d 130, 132 (2005) (holding that "the governing statutes limit the

---

[4] The circuit court's review of the agency's action pursuant to the VAPA is "'equivalent to an appellate court's role in an appeal from a trial court.'" "'In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.'" Mattaponi Indian Tribe v. Dep't of Envtl. Quality ex rel. State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (citations omitted), aff'd sub nom., Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 621 S.E.2d 78 (2005), petition for cert. filed, (Mar. 6, 2006) (No. 05-1141).

riparian owner's rights such that he may build, without a permit, only those structures 'necessary' or essential to the placement of a private pier for the limited purpose of accessing navigable waters or vessels moored in those waters" and that "[t]he riparian landowner may not build, without a permit, incidental appendages designed merely to enhance the primary purpose of the pier").

Essentially, appellant argues that the evidence did not support the VMRC decision to deny his application for an after-the-fact permit to construct a storage shed on his pier. Additionally, appellant argues that the VMRC violated Code § 28.2-1205(D), requiring the VMRC to decide any permit application within 90 days of its receipt.

<u>Sufficiency of the Evidence</u>

Determinations of whether to issue a permit for proposed construction plans over state-owned subaqueous lands are within the specialized competency of the VMRC.

> The General Assembly has given the VMRC jurisdiction over "all commercial fishing and all marine fish, marine shellfish, marine organisms, and habitat" "throughout" the "state-owned bottomlands in the Commonwealth." Code § 28.2-101. In order to safeguard the Commonwealth's resources, the General Assembly has enacted statutes expressly authorizing the VMRC to oversee the attempts of individual landowners to exercise their riparian rights.

<u>Evelyn</u>, 46 Va. App. at 627, 621 S.E.2d at 135. "Subaqueous land" is defined in Virginia as "ungranted beds of the bays, rivers, creeks and shores of the sea which are owned by the Commonwealth," including the "beds of tidal and nontidal water bodies," that extends "channelward of MLW [mean low water]," with mean low water being "the average elevation of low water observed over a specific 19 year period." William L. Roberts, <u>Coastal Resources and</u>

the Permit Process: Definitions and Jurisdictions, 6-7, http://ccrm.vims.edu/wetlands/techreps/ CoastalResourcesandPermitProcess.pdf.[5]

"We accord great deference to an administrative agency's interpretation of the regulations it is responsible for enforcing." Holtzman Oil Corp. v. Commonwealth, 32 Va. App. 532, 544, 529 S.E.2d 333, 339 (2000). "Where . . . the issue concerns an agency decision based on the proper application of its expert discretion, the reviewing court will not substitute its own independent judgment for that of the agency but rather will reverse the agency decision only if that decision was arbitrary and capricious." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988). A decision is arbitrary and capricious only if there is no credible evidence in the record to support the finding and the agency "'arbitrarily disregard[ed] uncontradicted evidence.'" City of Bristol Police Dep't v. Broome, 7 Va. App. 161, 167, 372 S.E.2d 204, 207 (1988) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)).

"The sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Johnston-Willis, 6 Va. App. at 242, 369 S.E.2d at 7. In

_____

[5] Appellant contends that the construction of his storage shed could not affect the subaqueous lands of the Commonwealth, as it did not actually touch the bottom of West Landing Creek. Thus, he argues that the only environmental impact that is relevant is that caused by his existing, permissible pier.

Appellant ignores a long-standing principle of property law: "[A] landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land." United States v. Causby, 328 U.S. 256, 264 (1946). Thus, the Commonwealth has a right to control all structures built over that subaqueous land, even where those structures do not actually touch the land itself.

Further, the General Assembly has clearly indicated its intent to regulate structures built on piers over the subaqueous lands of the Commonwealth. See Code § 28.2-1203(A)(5) (regulating the size and construction of enclosures built over boat slips and boat lifts).

making such a determination, a reviewing court must take "due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Id.

When reviewing applications for permits to build structures on piers over state-owned, subaqueous lands, the VMRC considers several factors, including those set out in Code § 28.2-1205(A):

> When determining whether to grant or deny any permit for the use of state-owned bottomlands, the Commission shall be guided in its deliberations by the provisions of Article XI, Section I of the Constitution of Virginia. In addition to other factors, the Commission shall also consider the public and private benefits of the proposed project and shall exercise its authority under this section consistent with the public trust doctrine as defined by the common law of the Commonwealth adopted pursuant to § 1-10 in order to protect and safeguard the public right to the use and enjoyment of the subaqueous lands of the Commonwealth held in trust by it for the benefit of the people as conferred by the public trust doctrine and the Constitution of Virginia. The Commission shall also consider the project's effect on the following:
>
> 1. Other reasonable and permissible uses of state waters and state-owned bottomlands;
>
> 2. Marine and fisheries resources of the Commonwealth;
>
> 3. Tidal wetlands, except when this has or will be determined under the provisions of Chapter 13 of this title;
>
> 4. Adjacent or nearby properties;
>
> 5. Water quality; and
>
> 6. Submerged aquatic vegetation (SAV).

In considering these factors, the VMRC is guided by both Article XI, Section 1 of the Constitution of Virginia and the common law public trust doctrine. Article XI, Section 1 of the Constitution of Virginia reads:

> To the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and

other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth.

The public trust doctrine in Virginia provides:

[T]he state holds the land lying beneath public waters as trustee for the benefit of all citizens. As trustee, the state is responsible for proper management of the resource to ensure the preservation and protection of all appropriate current and potential future uses, including potentially conflicting uses, by the public.

Virginia Marine Resources Commission, Subaqueous Guidelines, 21 Va. Reg. Regs. 1708 (Feb. 21, 2005). See also Sharon M. Kelly, Note, The Public Trust and the Constitution: Routes to Judicial Overview of Resource Management Decisions in Virginia, 75 Va. L. Rev. 895, 896 (1989) (noting that the public trust doctrine provides that "tidelands and certain other lands and waters are held by the state in trust for its citizens, to be used only for the benefit of the public").

In reviewing a permit application, the VMRC, under the VMRC Subaqueous Guidelines,[6] also considers the water-dependency of the proposed structure and the necessity of the structure to the exercise of the applicant's riparian rights. The VMRC defines as water-dependent "those structures and activities that must be located in, on, or over State-owned submerged lands." 21 Va. Reg. Regs. 1708 (Feb. 21, 2005).

When applying this definition, both of the following questions must be answered affirmatively:

1. Is it necessary that the structure be located over water? and

2. Is it necessary that the activity associated with the structure be over the water?

---

[6] The General Assembly allows the VMRC to issue regulations and guidelines for use in effecting their duties. See Code § 28.2-103 ("The Commission shall exercise all of the powers herein conferred and may promulgate regulations and guidelines necessary to carry out the provisions of this title.").

Id.[7] "[T]he 'ordinary and accepted meaning' of 'necessary' is 'whatever is essential for some purpose . . . of, relating to, or having the character of something that is logically required or logically inevitable or that cannot be denied without involving contradiction.'" Evelyn, 46 Va. App. at 632, 621 S.E.2d at 137 (quoting Scottsdale Ins. Co. v. Glick, 240 Va. 283, 287, 397 S.E.2d 105, 108 (1990)).

Thus, the VMRC considers several factors when considering an application for a permit to build a structure over the subaqueous lands of the Commonwealth. The presence or absence of any given factor is not dispositive of whether a permit should be granted; further, not every factor is applicable in every case.[8] Additionally, the VMRC may properly consider the cumulative effect of issuing multiple permits for structures over the waters of the Commonwealth. While the construction of one storage shed on one pier may not seem to pose a threat to the Commonwealth's subaqueous lands, the construction of hundreds of storage sheds on hundreds of piers poses the risk of substantial harm to the very interests that the VMRC is charged with protecting. See Evelyn, 46 Va. App. at 633, 621 S.E.2d at 138 ("Allowing unfettered noncommercial building atop piers that do not intrude into navigable waters is contrary to the plain meaning of [Code § 28.2-1203(A)(5)] and the common law and would produce an absurd result.").

Here, there is substantial, credible evidence in the record to support the finding of the VMRC denying appellant's permit application. A VMRC staff member, who conducted the site inspection, pointed to the fact that the storage shed was not water-dependent, as it was not

---

[7] In appellant's case, the VMRC answered both of those questions in the negative.

[8] At oral argument, appellant contended that, since there was no evidence presented to the VMRC of *every* factor listed in Code § 28.2-1205(A), the VMRC decision in his case was improper. However, appellant failed to include this argument in his questions presented before this Court. As such, we will not address this claim on appeal. See Rule 5A:20(c)-(e).

necessary that the shed itself be located over water, nor was it necessary for the storage of those items in the shed be over the water. The shed could be located on land, where it posed less of a threat to the waterways if there was storm damage. Appellant himself admitted that he could carry the items he stored in the shed to the water from his land, but that he found this "inconvenient."[9] Convenience, however, does not fall under the ambit of what can be considered "necessary."

In addition, two written protests opposed appellant's permit application, one from a neighboring property owner concerned about the obstruction to her view of the surrounding water. One commissioner, who voted against the issuance of a permit, pointed to the VMRC's recent denial of a similar application. Another commissioner, who also voted against the permit, noted that it was the "policy" of the VMRC to deny buildings similar to appellant's shed, evidencing a concern that the VMRC has for the cumulative effect of issuing permits to build storage sheds on piers over the subaqueous lands of the Commonwealth.

Given the evidence before the VMRC, we cannot say that the decision to deny appellant's permit application was "arbitrary and capricious," or that it was an abuse of discretion. There was substantial, credible evidence in the record to support the VMRC decision. Thus, we affirm the trial court's ruling to uphold the VMRC decision and to order appellant to remove the storage shed.

Violation of Time Requirement in Code § 28.2-1205(D)

Appellant argues that, because the VMRC failed to act on his permit application within 90 days of receiving it, Code § 28.2-1205(D) requires that the VMRC approve his application.

Code § 28.2-1205(D) provides:

> A permit is required and shall be issued by the Commission for placement of any private pier measuring 100 or more feet in length

_____

[9] At oral argument, appellant conceded that the shed was not a water-dependent structure.

- 10 -

from the mean low-water mark, which is used for noncommercial purposes by an owner of the riparian land in the waters opposite the land, *and that traverses commercially productive leased oyster or clam grounds, as defined in § 28.2-630,* provided that the pier does not extend beyond the navigation line established by the Commission or the United States Army Corps of Engineers. The permit may reasonably prescribe the design and location of the pier for the sole purpose of minimizing the adverse impact on such oyster or clam grounds or the harvesting or propagation of oysters or clams therefrom. The permit shall contain no other conditions or requirements. Unless information or circumstances materially alter the conditions under which the permit would be issued, the Commission shall act within 90 days of receipt of a complete joint permit application to approve or deny the application. If the Commission fails to act within that time, the application shall be deemed approved and the applicant shall be notified of the deemed approval.

(Emphasis added). It is clear from the emphasized language that this statute applies only to permits for piers that "traverse commercially productive leased oyster or clam grounds." "'[T]he province of [statutory] construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.'" Coleman v. Commonwealth, 27 Va. App. 768, 773, 501 S.E.2d 461, 463 (1998) (quoting Winston v. City of Richmond, 196 Va. 403, 408, 83 S.E.2d 728, 731 (1954)).

Appellant's pier, and the storage shed built upon it, do not fall under this statute. Indeed, appellant's pier and his subsequent permit application for the storage shed are governed by Code § 28.2-1203(A)(5), as noted by the VMRC's "no permit necessary" letter issued in response to appellant's original permit application in January 2001. Thus, the time period contained in Code § 28.2-1205(D), which does not appear anywhere else in Title 28.2, does not apply to appellant's permit application.

## CONCLUSION

For the foregoing reasons, we conclude that the evidence was sufficient to support the VMRC denial of appellant's application for a permit to construct a storage shed on his existing pier. Thus, we affirm the decision of the trial court.

<u>Affirmed.</u>
