COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Elder and Kelsey
Argued at Chesapeake, Virginia

RONALD W. BOONE

v.              Record No. 1315-07-1

SARAH HARRISON AND VIRGINIA
   MARINE RESOURCES COMMISSION                    OPINION BY
                                                  JUDGE D. ARTHUR KELSEY
VIRGINIA MARINE RESOURCES COMMISSION              MAY 20, 2008

v.              Record No. 1316-07-1

SARAH HARRISON


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                       Norman A. Thomas, Judge

            Martin A. Thomas (Decker, Cardon, Thomas, Weintraub &
            Neskis, P.C., on briefs), for Ronald W. Boone.

            Carl Josephson, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on briefs), for Virginia Marine
            Resources Commission.

            Thomas S. Carnes for Sarah Harrison.


        The Virginia Marine Resources Commission (VMRC) and Ronald W. Boone appeal a

circuit court order vacating a VMRC pier permit under the Virginia Administrative Process Act

(VAPA), Code § 2.2-4000 *et seq.*  Agreeing with the VMRC and Boone that the court exceeded

its authority in doing so, we reverse.

                                        I.

        In 2003, Hurricane Isabel destroyed the Harrison Fishing Pier.  Boone rebuilt the pier

pursuant to special permits authorized by executive order expediting the return of impacted areas

and structures to pre-Hurricane Isabel condition.  About a third of the way down the 1,490-foot

pier, Boone added a restaurant, gameroom, bar, and an upper deck area on the roof of the restaurant with a railing and gazebo. These structures were authorized by VMRC permits. While building the approved structures, Boone also constructed an unapproved 10-by-27⅔ foot structure on the upper deck to serve as an outdoor bar and catering station as well as a place where he could do office work. Seven swivel chairs were installed in front of the bar counter.[1]

When VMRC officers pointed out to Boone that his prior permits did not include this particular upper deck bar structure, Boone filed a request for an after-the-fact permit with the VMRC. At the VMRC hearing, Boone presented his plans for the pier and the upper deck, noted his considerable ($2.5 million) investment in the rebuilding effort, and apologized for not securing an amendment to his earlier permits prior to constructing the upper deck bar structure. Boone also presented other witnesses vouching for the public benefits of the pier generally and for Boone personally.

The Mayor of the City of Norfolk, Paul Fraim, appeared at the VMRC hearing but had to leave prior to being able to speak. Boone's counsel advised the VMRC that Mayor Fraim authorized him to proffer the mayor's testimony:

> Mayor Fraim indicated that he wished to tell this commission that the City Council held extensive public hearings before enacting the ordinances that authorized the conditional use permits that would allow them to have these facilities on the pier – the restaurant, etc.; that they also consider this an important part of the revitalization of the Willoughby section of Ocean View in the City of Norfolk; that at no time during their consideration did they believe that this structure that's in question that's on top was anything other than an entertainment structure. That's what they've always known it would be and always believed it would be a catering and entertainment facility. They, the City Council unanimously approved the project by

---

[1] Boone also increased the size of another upper deck structure, a gazebo, previously approved by the VMRC, and added two other structures, a temporary construction trestle and a fish cleaning station, not previously approved by the VMRC. Harrison has abandoned any contest over these structures.

> passing the ordinances allowing the conditional use permits and the Mayor believes that this facility would greatly enhance the ability of the citizens of Norfolk and the rest of the state to enjoy the Chesapeake Bay by being able to have a place where they can sit on this pier, where they can – it's open to the public – anybody that wants to come in – it's a restaurant, it's licensed by the ABC Board, it's also available for renting out for private functions to anybody that wants to do that, for weddings, etc.

Two citizens appeared at the VMRC hearing objecting to Boone's pier rebuilding effort. Sarah Harrison, the appellee in these consolidated cases, said she lived about ten houses down the shoreline west of the pier. Though difficult to follow, her presentation included complaints about the decisions of the Norfolk Planning Commission, the Norfolk City Council, and the Virginia Alcoholic Beverage Control Board — all of which approved various permits requested by Boone. Harrison also claimed the VMRC "may have been deceived" by Boone during the permitting process as to his ultimate intentions for the rebuilt pier. She similarly questioned Boone's plans to develop other parcels along the Ocean View shoreline.

Harrison also noted that Boone intended to use the pier for "dining, dancing, live bands and an arcade." The old pier, she said, housed only a bait and snack shop. Harrison also objected to the noise that she anticipated from Boone's intended uses for the upper deck. She presented to the commission a "DVD of the sound testing" Boone performed prior to his son's wedding reception on the pier.

Early in her remarks, Harrison said she "would like to submit evidence for the record" and then, throughout her testimony, referred to various documents. Among these were photographs of the former Harrison Fishing Pier, materials copied from the VMRC file, advertisements by the City of Norfolk, materials submitted to the Norfolk Planning Commission and Norfolk City Council, transcript pages from the hearing before the ABC Board, and the like. After she finished speaking, the VMRC chairman advised Harrison to provide these documents to the VMRC staff.

In reply to Harrison's testimony, Boone explained the differences between the earlier construction plans and the structures ultimately constructed on the pier. He acknowledged having an ownership interest in nearby properties and insisted that he had "never given any kind of false information" at any time during the permitting process for the rebuilt pier. As for the sound recording, Boone said it merely recorded a "sound test" he performed with "larger speakers" in order to "make sure that it was not loud out there." In non-test conditions, Boone suggested, he would be using smaller speakers. The VMRC chairman interrupted Boone at that point stating, "We're not interested in that."

The other objector, Benny LeBon, added a complaint not mentioned by Harrison. Living "just down the street from the pier," LeBon said that when he gets up at the crack of dawn he could not see the sunrise "until the sun gets over top of the building — it's right directly in my path when the sun comes up." He thought other waterfront residents would have the same problem. Like Harrison, LeBon objected to the "restaurant, dancing, dining, and so forth" on the pier. "There's got to be a place for people to go fish," LeBon concluded, "I'm not sure fine dining and dancing is what we're thinking about for the Chesapeake Bay."

The VMRC commissioners then proceeded to discuss the issue before it: whether to grant the after-the-fact permit for, *inter alia*, the outdoor bar added by Boone to the already approved upper deck. The commissioners talked about various aspects of the issue. Several voiced concerns about the use of the upper deck structure as a bar instead of a catering operation. Another stated he thought some of the citizen complaints, including concerns over "noise" and "nature of the activities," were beyond the VMRC's jurisdiction but were at any rate addressed by restrictive conditions adopted by the City of Norfolk in its special-use permit.

One commissioner noted that the upper deck bar would enhance Boone's ability to recoup the $2.5 million capital outlay for the pier rebuilding effort. Another commented on the

"huge decrease in public access to the water" and the inability of pier owners to rebuild because of the costs. Boone's upgraded pier, this commissioner noted, was an "enormous project" that gave the "public access to the water which is so sorely needed." Another commissioner agreed: "Access to the use of the water and enjoyment of the scenery of the water is overwhelming to me in this case."

The VMRC chairman put the matter to a vote. The commissioners unanimously voted to issue the after-the-fact permit. They imposed on Boone, however, a $10,000 fine for not obtaining the permit prior to constructing the upper deck bar. Dissatisfied with this decision, Harrison filed a petition for appeal to the circuit court under VAPA. The circuit court vacated the VMRC's grant of Boone's permit, ordered Boone to dismantle the upper deck bar, and awarded Harrison $9,413 in attorney fees.

The circuit court rested its ruling on three alternative grounds. It first held that the VMRC violated Harrison's due process rights by failing to consider her written exhibits. The court next ruled the VMRC failed to consider the statutory factors outlined in Code § 28.2-1205(A). Finally, the court conducted its own review of the "public trust doctrine" and concluded the evidence before the VMRC did not support its decision to authorize Boone's upper deck, outdoor bar. Boone and the VMRC filed unsuccessful motions to reconsider. The circuit court entered a final order declaring the permit "null and void" and ordering the removal of the upper deck bar structure within 90 days. Boone and the VMRC obtained a stay of the judgment and appealed to us contending the circuit court erred as a matter of law.

II.

A. VAPA & The Limited Nature of Judicial Review

Under VAPA, the circuit court reviews the agency's action in a manner "equivalent to an appellate court's role in an appeal from a trial court." Mattaponi Indian Tribe v. Dep't of Envtl.

Quality ex rel. State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (citations omitted), aff'd sub nom., Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 621 S.E.2d 78 (2005). The circuit court has no authority under VAPA to reweigh the facts in the agency's evidentiary record. VAPA authorizes the court to "reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Id. (citation omitted and emphasis in original).

Nor can the court substitute its own judgment for the agency's on matters committed by statute to the agency's discretion. Instead, "when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted). This standard recognizes the larger premise that, before any legal question can be answered, an *a priori* question must first be asked — who has the authority to decide. It is the one question that precedes all others.

In Virginia, the legislature has invested the VMRC with wide discretion in determining whether to issue permits for projects over state-owned subaqueous lands. Relying on the "specialized competency of the VMRC" on such matters, Palmer v. Commonwealth Marine Res. Comm'n, 48 Va. App. 78, 86, 628 S.E.2d 84, 88 (2006), the legislature did not restrict the VMRC's judgment to any decisionmaking formula intended to dictate the outcome of each permitting decision. Instead, Code § 28.2-1204 instructs the VMRC to permit "reasonable uses" of state-owned bottomland. The VMRC "shall be guided in its deliberations," Code § 28.2-1205(A), by the Virginia Constitution's emphasis on the preservation of the environment, the public's access to public lands for recreation, and maintenance of all public resources "for the

benefit, enjoyment, and general welfare of the people of the Commonwealth," Va. Const. Art. IX, § 1.

Code § 28.2-1205(A) also directs the VMRC to exercise its authority consistent with the "public trust doctrine as defined by the common law of the Commonwealth" and to consider an additional list of specific factors, including the effect of the project on "[a]djacent or nearby properties." See Palmer, 48 Va. App. at 87-88, 628 S.E.2d at 89. "The presence or absence of any given factor is not dispositive of whether a permit should be granted; further, not every factor is applicable in every case." Id. at 90, 628 S.E.2d at 90.

### B. THE CIRCUIT COURT'S THREE ALTERNATIVE HOLDINGS

The circuit court rested its ruling on three alternative grounds. On appeal, the VMRC and Boone argue the circuit court erred on each one. We agree.

#### (i) *Due Process Claim Regarding Harrison's Exhibits*

The circuit court held the VMRC violated Harrison's due process rights by allegedly refusing to consider her written exhibits. As Boone points out, however, Harrison's VAPA petition for appeal in the circuit court raised no due process claim and mentioned nothing about the VMRC disregarding her exhibits. None of her briefs in the circuit court argued that the VMRC violated her due process rights by failing to consider her exhibits. Nor did Harrison's counsel ever assert this claim at any hearing in the circuit court. The litigants learned of this issue for the first time while reading the circuit court's letter opinion.

"When the VAPA authorizes judicial review, it must be conducted 'in the manner provided by the rules of the Supreme Court of Virginia.'" Christian v. Va. Dep't of Soc. Servs., 45 Va. App. 310, 314, 610 S.E.2d 870, 872 (2005) (quoting Code § 2.2-4206). Rule 2A:4(b) requires all VAPA petitions for appeal filed in the circuit court to "specify the errors assigned" as

well as the "specific" relief requested. Harrison's petition for appeal in the circuit court never alleged any due process claim. Nor did she later seek to amend her petition to include such a claim. Instead, the circuit court raised the due process claim *sua sponte* as a basis for reversing the VMRC decision. The court erred by doing so. See generally Clifford v. Commonwealth, 274 Va. 23, 25, 645 S.E.2d 295, 297 (2007) (holding "an appellate court may not 'recast' an argument" into "a different argument upon which to base its decision").

(ii) *The VMRC's Consideration of Code § 28.2-1205(A) Factors*

The circuit court also held that the VMRC failed to consider the impact of the upper deck bar on "[a]djacent and nearby properties" as required by Code § 28.2-1205(A)(4). The court's opinion identified only two possible impacts on nearby properties: noise and sunrise views. We find no merit in either assertion.

With respect to the noise complaint, the circuit court held the VMRC "delegated" its decisionmaking responsibility to the Norfolk City Council by relying on the noise restrictions imposed on Boone's special use zoning permit. This constituted an unlawful "abdication" of the VMRC's statutory duties, the court concluded.

The litigants debate on appeal whether noise constitutes a sufficient impact on "[a]djacent or nearby properties," Code § 28.2-1205(A)(4), to be a required statutory consideration in every case. The Attorney General opines that the VMRC should consider only direct "physical" impacts. See 1972-73 Op. Att'y Gen. 188, 1973 Va. AG LEXIS 108 (1973). Harrison contends that excessive noise should always be considered if it affects nearby properties and complains that the VMRC's position differs from its actions in other cases in which non-physical impacts were considered.

We find this debate largely academic because the administrative record demonstrates, as Boone argues on appeal, that the VMRC did consider Harrison's noise complaint. At the VMRC

hearing, Harrison and LeBon testified on this subject. Afterwards, the commission invited Boone to offer a response. He explained that the sound recording offered by Harrison merely recorded his use of "large speakers" to perform a "sound test." Apparently based upon this explanation, the commissioners chose not to listen to the recording.

During deliberations, the VMRC chairman noted that the proffer of the mayor's statement established that the City of Norfolk "approved everything" and did not "have a problem with it so I don't see why we should." While questioning whether "noise" and the "nature of the activities" were within the VMRC's jurisdiction, an associate commissioner pointed out that, in any event, the City of Norfolk resolved these concerns with "some restrictive conditions on the use of the property, hours of operation, etc." These conditions prohibited "entertainment for the outdoor portion of the restaurant" after 10:00 p.m and subjected all activities on the pier to the noise regulations found in Norfolk City Code §§ 26-1 to 26-13. "So I think that's already been addressed by the City," the associate commissioner reasoned.

Under Code § 28.2-1205(B), the VMRC "*shall* consult with other state agencies . . . whenever the Commission's decision on a permit application relates to or affects the particular concerns or activities of those agencies." (Emphasis added.) It follows that the VMRC *may* consult with municipal authorities and consider their actions to the extent relevant to the permit application. While an administrative agency cannot "shirk its own statutory mandate" to take into account all relevant considerations, neither must it "pretend that it is the only agency addressing the issue when it is not; that would only lead it to conduct a wasteful, duplicative proceeding." Holyoke Gas & Electric Dep't v. SEC, 972 F.2d 358, 363 (D.C. Cir. 1992).

Given the VMRC's willingness to take evidence on the noise issue, both from Harrison and Boone, and to consider the City of Norfolk's role in restricting the special use permit, we reject the circuit court's conclusion that the VMRC abdicated any statutory duty to consider the

- 9 -

noise issue as a relevant impact on "[a]djacent or nearby properties." Code § 28.2-1205(A)(4). While it appears the subject was not given dispositive weight, nothing in the statute requires that any specific factor be given any measurable weight, only that it be *considered* by the VMRC during the decisionmaking process. The weight that should be properly given to any specific factor — including any claimed impact on "[a]djacent or nearby properties," Code § 28.2-1205(A)(4) — is a decision for the VMRC not the courts.

We acknowledge, but find unpersuasive, the circuit court's emphasis on the "we're not interested in that" remark by the VMRC chairman during Boone's rebuttal testimony. Under VAPA, "we cannot seize upon questions, comments or incidences of an orderly administrative process to discredit agency action that is supported by the record, viewed in context and as a whole." The Mattaponi Indian Tribe, 43 Va. App. at 706, 601 S.E.2d at 675 (citation omitted). "We focus instead on the decision itself and the entire factual record considered by the agency." Id. (citation omitted). "By design, this standard gives 'great stability and finality to the fact-findings of an administrative agency,'" id. (citation omitted), and "also ensures that we remain faithful to our statutory duty to "take due account of the presumption of official regularity" as well as the agency's "experience and specialized competence," id. (quoting Code § 2.2-4027).

With respect to the sunrise view issue, we find even less merit in this assertion. Harrison never testified before the VMRC that the upper deck bar interfered with her view of the sunrise. Perhaps that could be inferred from LeBon's testimony. But, if so, the inference is far too slender to support the weight of Harrison's argument. LeBon's next-door neighbor, Harrison said she lived about ten houses down the shoreline west of the pier. Harrison did not present any evidence on how often the sun and the upper deck bar share the same azimuth from the vantage point of her home. Nor did she account for the effect of solar declination tracking the change of seasons.

- 10 -

The specific obstruction in question, after all, is not the 1,490-foot pier with shelters and fish cleaning station, or its 116-by-42 foot building housing a restaurant, bait shop, rest rooms, snack bar, and recreational gameroom. Nor is it the uncontested structures on the roof of the building: the upper deck with its railing and 16½-by-11 foot gazebo. The obstruction at issue here is the 10-by-27⅔ foot upper deck bar — which, at best, would have a purely incremental and momentary impact on Harrison's sunrise views. We hold the VMRC did not fail to give sufficient consideration to this particular issue.

(iii)  *The VMRC's Violation of the Public Trust Doctrine*

Code § 28.2-1205(A) directs the VMRC to exercise its authority consistent with the public trust doctrine adopted by the common law and the provisions of Article XI, Section 1 of the Virginia Constitution. As we recognized in Palmer, the public trust doctrine provides:

> The state holds the land lying beneath public waters as trustee for the benefit of all citizens. As trustee, the state is responsible for proper management of the resource to ensure the preservation and protection of all appropriate current and potential future uses, including potentially conflicting uses, by the public.

48 Va. App. at 88, 628 S.E.2d at 89 (quoting VMRC, Subaqueous Guidelines § I(B)); see Sharon M. Kelly, The Public Trust and the Constitution:  Routes to Judicial Overview of Resource Management Decisions in Virginia, 75 Va. L. Rev. 895, 896 (1989); see also Ill. Cent. R.R. v. Illinois, 146 U.S. 387, 436 (1892) (described by Commonwealth v. Newport News, 158 Va. 521, 536, 164 S.E. 689, 693 (1932), as "[p]robably the clearest enunciation of this trust doctrine").

In this case, the circuit court held the upper deck bar violated the public trust doctrine as a matter of law and, thus, that the VMRC acted arbitrarily and capriciously in granting the permit. The court explained its reasoning this way:

> With respect to non-water dependent structures, the public trust doctrine must mean something. Yet, VMRC renders it meaningless by granting Boone's permit for the second-story bar structure when its

- 11 -

functions merely duplicate already-permitted uses on the Ocean View Fishing Pier. At a minimum, proper application of the public trust doctrine requires avoidance of redundant non-water dependent uses at close proximity on the same pier. The Court rules that, under the circumstances of this case, VMRC misapplied the public trust doctrine. It thereby breached its duties to the public by permitting the second-story bar structure, when its intended non-water dependent use serves only to duplicate facilities available within or from the pier's main building. The record establishes that the structure is not reasonable or even valuable to the greater public interest as a non-water dependent use, and, clearly, alternatives exist "for reducing any anticipated adverse impacts."

The circuit court framed its reasoning to track the Subaqueous Guidelines adopted by the VMRC. See generally Palmer, 48 Va. App. at 88-89, 628 S.E.2d at 89-90. Under those guidelines, the VMRC considers whether the anticipated use would be water dependent — like boating, fishing, marine commerce, and the like. Code § 28.2-1205, however, contains no mandatory water-dependency criterion. The VMRC guidelines also make clear that water dependency is not a mandatory factor: "Use of the definition of water dependency does not necessarily preclude issuance of a permit for non-water dependent structures over State-owned submerged lands. At public hearing, the Commission may determine that, while a structure is not water dependent, it is a reasonable use of State-owned submerged lands." VMRC Subaqueous Guidelines § I(C)(2).

The circuit court held the VMRC's decision to grant a permit for the upper deck bar violated the public trust doctrine as a matter of law because the outdoor bar on the upper deck was not water-dependent under the VMRC guidelines and "merely duplicate[d]" the indoor bar on the lower deck. We need not stake out definitive boundaries for the public trust doctrine in order to conclude the court erred. Code § 28.2-1205 contains no water-dependency criterion, and the VMRC's guidelines include water dependency only as a factor for consideration. See Palmer, 48 Va. App. at 90, 628 S.E.2d at 90 (recognizing that, as related to private piers, "the

VMRC may properly consider the cumulative effect of issuing multiple permits for structures over the water of the Commonwealth").

Code § 28.2-1205(A) directs the VMRC — not the courts — to decide whether, in its expert discretion, granting the permit would be consistent with the public trust doctrine.  Under VAPA, the courts have no authority to make a *de novo* judgment on the subject.  Absent a statutory or constitutional violation, a VMRC decision to grant a permit can be judicially upended under VAPA only if the decision can be fairly condemned as arbitrary and capricious, wholly lacking in reasoned judgment or supporting facts.  No such conclusion can be reached under the facts of this case.[2]

III.

The circuit court erred in vacating the VMRC's grant of an after-the-fact permit for the upper deck bar built on the roof of Boone's pier restaurant.  It necessarily follows that the court had no authority to order the dismantling of the bar structure or to award Harrison attorney fees as the prevailing party.

Reversed.

---

[2] Given our ruling, we need not address the appellants' additional arguments that (i) VMRC decisions "consistent with the public trust doctrine . . . shall not be deemed to have been made pursuant to the police power" per Code § 28.2-1205(F); (ii) the circuit court's ruling, in effect, judicially reviewed earlier, unappealed permit decisions over which it had no jurisdiction; (iii) none of Harrison's complaints involve claims of direct, physical impacts on her property; (iv) Harrison was not an aggrieved party for purposes of a VAPA appeal; and (v) the circuit court's remedial order violated Code § 2.2-4029