COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Beales and Senior Judge Clements
Argued at Richmond, Virginia

VIRGINIA BOARD OF VETERINARY MEDICINE

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0252-14-2                 JUDGE ROBERT P. FRANK
                                                NOVEMBER 12, 2014
LORI D. LEONARD

             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                           Beverly W. Snukals, Judge

        James E. Rutkowski, Assistant Attorney General (Mark R. Herring,
        Attorney General; Cynthia V. Bailey, Deputy Attorney General;
        Allyson K. Tysinger, Senior Assistant Attorney General; Charis A.
        Mitchell, Assistant Attorney General, on briefs), for appellant.

        John A. Conrad (The Conrad Firm, on brief), for appellee.


        In this administrative appeal, the Virginia Board of Veterinary Medicine (the Board)

challenges an order of the Richmond Circuit Court.  That order reversed an order of the Board

sanctioning Lori D. Leonard, D.V.M. (appellee), for violating Code § 54.1-3807(5) and 18 VAC

150-20-140(6), (7), and (8).  On appeal, the Board contends the circuit court erred in allowing

appellee to argue that the Board's interpretation of its own regulation was erroneous, because it

was not contained in the petition for appeal.  The Board also argues it was error for the circuit

court to reverse the Board's order based on the court's own interpretation of that regulation.

Further, the Board maintains the circuit court failed to give proper deference to the Board's

interpretation of its own regulation.  For the reasons stated, we affirm the circuit court's decision

to address regulatory interpretation.  However, we reverse the circuit court's interpretation of the

regulation and reinstate the decision of the Board.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## BACKGROUND[1]

On June 3, 2013, the Board held a formal hearing to determine if appellee had failed to uphold the proper standard of care in performing surgery on a canine. Upon hearing evidence, the Board issued a final order on June 3, 2013.

That order made certain findings of fact: On February 15, 2011, appellee performed an incomplete "spay operation"[2] on a certain canine by leaving a large portion of the right ovary as later revealed by an ultrasound. A second spay operation was later performed by a different veterinarian to remove the remnant of the right ovary. At the hearing, Dr. Richard P. Suess, Jr. testified appellee failed to meet the standard of care by not removing both ovaries.

The Board concluded appellee's actions violated Code § 54.1-3807(5)[3] and 18 VAC 150-20-140(6), (7) and (8)[4]of the regulations. Thus, the Board, among other sanctions, reprimanded appellee.

---

[1] The underlying facts are not in controversy.

[2] To "spay" is "[t]o take the ovaries and uterus out of female animals; makes them unable to reproduce." www.pedmd.com (last visited July 29, 2014).

[3] Code § 54.1-3807 states in part:

> The Board may refuse to grant or to renew, may suspend or revoke any license to practice veterinary medicine or to practice as a veterinary technician or registration to practice as an equine dental technician if such applicant or holder:
>
> *　*　*　*　*　*　*
>
> 5. Is guilty of unprofessional conduct as defined by regulations of the Board.

[4] 18 VAC 150-20-140 states in part:

> Unprofessional conduct as referenced in § 54.1-3807(5) of the Code of Virginia shall include the following:
>
> *　*　*　*　*　*　*

Appellee's third assignment of error, as stated in her petition for appeal, is:

> The Final Order of the Vet Board [sic] is erroneous because there is not substantial evidence in the record of this case that Dr. Leonard violated any state law, federal law, and/or Vet Board regulations pertaining to the practice of veterinary medicine, that she practiced veterinary medicine in such a manner as to endanger the health and welfare of her patients or the public, or that she is unable to practice veterinary medicine with reasonable care or safety, in violation of Virginia Code Section 54.1-3807(5) and 18 VAC 150-20-140(6), (7), and (8) of the Regulations Governing the Practice of Veterinary.

In her petition for appeal to the circuit court, appellee challenged the testimony of the Board's expert, Dr. Suess, contending he never identified a specific act or omission which violated the statute or regulation. Appellee argued Dr. Suess never testified appellee violated a statute or regulation. Further, appellee maintained the failure to remove the entire right ovary does not prove she violated state law or regulation.

Nowhere in her petition did appellee expressly contend the Board misinterpreted its regulation nor did it expressly raise her later argument that the regulation required multiple acts or omissions.

In her counsel's opening statement to the circuit court, appellee did argue the regulations in question required multiple patients and multiple animals. She further contended the

---

6. Violating any state law, federal law, or board regulation pertaining to the practice of veterinary medicine, veterinary technology or equine dentistry.

7. Practicing veterinary medicine or as an equine dental technician in such a manner as to endanger the health and welfare of his patients or the public, or being unable to practice veterinary medicine or as an equine dental technician with reasonable skill and safety.

8. Performing surgery on animals in an unregistered veterinary establishment or not in accordance with the establishment permit or with accepted standards of practice.

- 3 -

regulations address systemic or widespread prohibited acts. In the instant case, appellee argued there was only a solitary breach of the standards of care.

The Commonwealth objected to appellee's argument since the petition for appeal did not contend the Board erred in its interpretation of its own regulation.

The following exchange occurred between the court and appellee's counsel:

> THE COURT: But I guess my question is, I'm not sure I really knew this was your argument either about the systemic versus solitary breach case. I mean, is that clearly set out in your petition as it is here this morning?
>
> MR. CONRAD: It's set out in the context of stating that there's no substantial evidence.
>
> THE COURT: Well, I understand that. But you would agree that this is not what I came in thinking that that's what your argument was going to be, but that's fine. We'll deal with that. But in broad terms, yes, you said that there's no substantial evidence to support any violation of law or any of the regulations 6, 7, and 8. But, specifically, I don't think the argument was made that the reason why there is no substantial evidence is because it says, quote: In [the dog's] case versus the use of, plural, animals and – well, animals. Does it? I mean, maybe it does. I just maybe didn't catch it.

After appellee's counsel attempted to explain whether her assignment of error encompassed her argument that the regulation required multiple incidents, the circuit court responded that appellee's third assignment of error did not seem to match her argument before the circuit court at the hearing. Nevertheless, the court indicated that discrepancy did not prohibit her from arguing that point before the court, finding that appellee's counsel "technically" had "probably covered it" in the petition for appeal.

Appellee was permitted to argue the Board's incorrect interpretation of its regulations, i.e., that the regulation does not prohibit single acts of endangerment, emphasizing the plural nature of the words "patients" and "animals."

- 4 -

The trial court requested the parties brief appellant's third assignment of error, i.e., whether it included appellee's statutory interpretation argument.

In its letter opinion of January 14, 2014, the circuit court found there was not substantial evidence in the agency record to support the agency decision under Code § 2.2-4027 and thus reversed the Board's order of June 3, 2013. The circuit court interpreted §§ 7 and 8 of 18 VAC 150-20-140 to require multiple incidents of endangerment and multiple surgeries on animals, not in accordance with accepted standards of practice. The court observed the Board found evidence of only one incident. Thus, based on the circuit court's interpretation of the regulation, there was not substantial evidence of multiple incidents to support the Board's order.

The circuit court also addressed the scope of assignment of error three and found appellee properly preserved this issue on appeal to the circuit court. The court acknowledged appellee's factual argument under this assignment of error has changed from her petition for appeal, yet found her assignment of error "is consistent." The court noted appellee presented her current argument in her closing argument to the court and to the Board.

This appeal follows.

ANALYSIS

Appellant first argues the circuit court erred in allowing argument on and ultimately basing its ruling upon a question of regulatory interpretation, not raised in appellee's petition for appeal to the circuit court, which petition was limited to the substantiality of the evidence. Rule 2A:4(b) states, "[t]he petition for appeal [to the circuit court] shall designate the regulation or case decision appealed from, specify the errors assigned, state the reasons why the regulation or case decision is deemed to be unlawful and conclude with a specific statement of the relief requested." See also Boone v. Harrison, 52 Va. App. 53, 63, 660 S.E.2d 704, 709 (2008) (addressing the requirements of Rule 2A:4(b)). Under the circumstances of this case, we find that the regulatory interpretation

- 5 -

argument is subsumed in the petition for appeal, and, for that reason, the circuit court did not err in permitting argument on that issue. Further, appellee argued the issue of regulatory interpretation before both the Board and the circuit court. The circumstances here are different from those in Boone, where the circuit court *sua sponte* raised a due process issue in a letter opinion when that issue was not litigated in the administrative agency or even raised by either party at the hearing in the circuit court. Id. at 63-64, 660 S.E.2d at 709. Moreover, we find it instructive that the purpose of Rule 5A:12(c)(1), which similarly governs a petition for appeal to this Court – and specifically the assignments of error – "is to point out the errors with reasonable certainty in order to direct [the court] and opposing counsel to the points on which [the] appellant intends to ask a reversal of the judgment, and to limit discussion to these points." Findlay v. Commonwealth, 287 Va. 111, 116, 752 S.E.2d 868, 871 (2014). As the issue of regulatory interpretation was thoroughly argued below, the parties were on notice as to the question. Therefore, we do not subvert the purpose of Rule 2A:4(b) or Rule 5A:12(c)(1) by addressing the merits of the issue.

Appellant contends the circuit court afforded no deference to the Board's interpretation of its own regulation but applied its own interpretation. The circuit court concluded that because the regulation in question employed plural words, "patients" and "animals," a single act of unprofessional conduct did not constitute a violation of the regulation.

> [W]here the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, *the agency's decision is entitled to special weight in the courts*. "The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to matters coming within its cognizance, and judicial interference is permissible only for relief against the *arbitrary or capricious action that constitutes a clear abuse of the delegated discretion*. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the legislature with the administrative function." Va. Alcoholic Beverage Control Comm's v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979).

Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 243, 369 S.E.2d 1, 8 (1988) (emphasis added). "[W]here the legal issues require a determination by the reviewing court whether an agency has, for example, accorded constitutional rights, or failed to observe required procedures, less deference is required and the reviewing courts should not abdicate their judicial function and merely rubber-stamp an agency determination." Id. at 243, 369 S.E.2d at 7-8. "'A decision is arbitrary and capricious only if there is no credible evidence in the record to support the finding and the agency arbitrarily disregarded uncontradicted evidence.'" Mazloumi v. Dep't of Envtl. Quality, 55 Va. App. 204, 209, 684 S.E.2d 852, 855 (2009) (quoting Palmer v. Commonwealth Marine Res. Comm'n, 48 Va. App. 78, 87, 628 S.E.2d 84, 89 (2006)). Under this deference, "[c]ourts generally defer to an agency's interpretation of its own regulations." Id. See Code § 2.2-4027 ("the court shall take due account of the . . . experience and specialized competence of the agency, and the purpose of the basic law under which the agency has acted").

However, courts do not defer to an agency's interpretation "'[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have a special competence, i.e., the common law or constitutional law . . . .'" Johnston-Willis, Ltd., 6 Va. App. at 243, 369 S.E.2d at 8 (quoting Hi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 914-15 (3d Cir. 1981) (citing Piper v. Chris Craft Industries, 430 U.S. 1, 41 n.27 (1977))).

Thus, our inquiry is whether the regulation falls within the "specialized competence" of the Board. If so, the circuit court erred in giving no deference to the Board's interpretation.

The Board is one of many health and professional regulatory boards. These boards can promulgate regulations necessary for the preservation of the health, safety, and welfare of the public when:

> 1. The unregulated practice of the profession or occupation can harm or endanger the health, safety or welfare of the public, and the potential for harm is recognizable and not remote or dependent upon tenuous argument;

- 7 -

2. The practice of the profession or occupation has inherent qualities peculiar to it that distinguish it from ordinary work and labor;

3. The practice of the profession or occupation requires specialized skill or training and the public needs, and will benefit by, assurances of initial and continuing professional and occupational ability.

Code § 54.1-3805 prohibits anyone from practicing veterinary medicine without being licensed by the Board.

The statutory scheme, along with 18 VAC 150-20-140, clearly indicates that the Board is charged with protecting the public and animals from unprofessional conduct, including malpractice.

The Board interpreted its own regulation, 18 VAC 150-20-140, as requiring only a single incident of unprofessional conduct. Appellee's argument would allow a veterinarian to engage in one act of improper conduct with impunity. Only the second act, she contends, would trigger the Board's involvement. Such an interpretation only protects subsequent animals and leaves the first animal subject to unaccountable conduct, no matter how egregious.

Whether or not to protect all animals or only subsequent animal patients is within the specialized competence of the Board. Again, its charge is to protect the health, welfare, and safety of the public, including animal patients. It is inconceivable that the Board would ignore the safety of the first animal subjected to unprofessional conduct.

Appellee further argues that the Board erroneously relied on Code § 1-227. We disagree. In this case, the circuit court erroneously focused on the plural language of Code § 1-227 in interpreting the regulation. Code § 1-227, which is contained in Chapter 2.1 (Common Law and Rules of Construction) states, in its entirety, "[a] word used in the singular includes the plural and a word used in the plural includes the singular." While appellee contends that this section does not apply to agency regulations, our case law holds otherwise. See Avalon Assisted Living

Facilities v. Zager, 39 Va. App. 484, 503, 574 S.E.2d 298, 307 (2002) ("We see no reason not to apply these same rules to the interpretation of regulations adopted by an administrative agency pursuant to statutory authority granted it by the legislature."). Code § 1-227 very clearly demonstrates that the circuit court erred in its interpretation of 18 VAC 150-20-140.

18 VAC 150-20-140(7) has two parts. The first part concerns a veterinarian's unprofessional conduct which endangers the health and welfare of animals or the public. The second part addresses the veterinarian's inability to practice veterinary medicine with reasonable skill and safety. Unprofessional conduct might arise from the veterinarian's physical or mental incapacity to practice with reasonable skill and safety. Appellee argues that the second paragraph addresses a single act of unprofessional conduct. She contends this reinforces her argument that the first part of the section requires multiple acts of unprofessional conduct, thus supporting the circuit court's interpretation. Appellee misreads the second part of section 7. That language addresses the veterinarian's *capacity* to perform veterinary medicine, not the actual performance of her profession. While evidence of a veterinarian's performance in any given procedure may be relevant to demonstrate the veterinarian's physical or mental ability to practice with reasonable skill and safety, the former is not a requirement to prove the second part of section 7.

We therefore conclude the circuit court erred in not affording proper deference to the Board's interpretation of its own regulation. The circuit court improperly employed its own interpretation of the regulation.

We therefore will affirm the circuit court's decision to allow the regulatory interpretation argument, but we reverse the circuit court's interpretation of the regulation and reinstate the decision of the Board.

Affirmed in part and
reversed in part.