COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Humphreys and Kelsey
Argued at Alexandria, Virginia

PUBLISHED

RESTON HOSPITAL CENTER, LLC

                                                          OPINION BY
v.     Record No. 2301-12-4                        JUDGE D. ARTHUR KELSEY
                                                       SEPTEMBER 30, 2014

KAREN REMLEY, M.D., M.B.A., F.A.A.P.,
  FORMER STATE HEALTH COMMISSIONER,[1]
  INOVA HEALTH CARE SERVICES, D/B/A
  INOVA FAIR OAKS HOSPITAL

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Pamela S. Baskervill, Judge Designate

Robert L. Hodges (Nathan A. Kottkamp; Thomas J.
Stallings, Jeffrey D. McMahan, Jr.; McGuire Woods LLP,
on briefs), for appellant.

Ishneila G. Moore, Assistant Attorney General (Kenneth
T. Cuccinelli, II, Attorney General; Rita W. Beale,
Deputy Attorney General; Allyson K. Tysinger, Senior
Assistant Attorney General, on briefs), for appellee Karen
Remley, former State Health Commissioner.

Amandeep S. Sidhu (M. Miller Baker; H. Guy Collier;
Mary D. Hallerman; McDermott Will & Emery LLP, on
briefs), for appellee Inova Health Care Services, d/b/a
Inova Fair Oaks Hospital.

The State Health Commissioner issued a certificate of public need (COPN) to Inova

Health Care Services authorizing it to relocate a medical radiation therapy service from Inova

Fairfax Hospital to Inova Fair Oaks Hospital, both situated in Fairfax County.  A competitor,

Reston Hospital Center, LLC, objected to the relocation during the administrative process and on

---

[1] The title page of the Attorney General's brief names acting Commissioner Cynthia
Romero, M.D., F.A.A.P., as the appellee.  The signature page of the same brief, however, names
Karen Remley, M.D., M.B.A., F.A.A.P., former State Health Commissioner, as appellee.
Because the original notice of appeal names former Commissioner Karen Remley as the
appellee, Remley is the named party to this appeal.

appeal to the circuit court. The circuit court held that the Commissioner acted within her authority when she issued the COPN. We agree and affirm the circuit court's ruling.

## I. BACKGROUND

### A. *The Administrative Regulatory System*

A comprehensive regulatory system governs nearly every aspect of medical care facilities in the Commonwealth.[2] Article 1.1, Chapter 4 of Title 32.1 requires a "certificate of public need" for various types of projects conducted by medical care facilities. Code § 32.1-102.1. "No person shall commence any project without first obtaining a certificate issued by the Commissioner. No certificate may be issued unless the Commissioner has determined that a public need for the project has been demonstrated." Code § 32.1-102.3(A). The statute directs the Board of Health to establish "regional health planning agencies," which manage the "health planning regions" in the Commonwealth and assist the Board in a number of ways, including by "reviewing applications for certificates of public need and making recommendations to the Department." Code § 32.1-122.05. The Board of Health must also prepare a "State Medical Facilities Plan" to guide planning and forecasting efforts. Code § 32.1-102.1.

### B. *The Dispute over the Location of a Single Linear Accelerator*

Several hospitals are located in Health Planning Region II (HPR II), which encompasses the same area as Planning District 8 (PD 8) and includes Fairfax County. Multiple hospitals in HPR II utilize radiation therapy machines, called linear accelerators, to provide cancer treatment

---

[2] An application for a COPN must be reviewed by the local health planning agency and the Department of Health's Division of Certificate of Public Need (DCOPN). See Code § 32.1-102.6; 12 Va. Admin. Code § 5-220-230. Each group submits a separate report and recommendation to the Commissioner. Upon a showing of good cause, a non-applicant party may become a party to the application proceedings. An adjudication officer for the Commissioner then holds an Informal Fact Finding Conference, during which he receives evidence and hears the parties' arguments. The adjudication officer provides a recommendation to the Commissioner, who makes the final agency decision on the application.

services.  Inova Fairfax has four linear accelerators, and Reston has two.  Although Inova Fair Oaks provides extensive cancer treatment services, it does not have a linear accelerator.

In 2008, Inova applied for a COPN to add a linear accelerator to Inova Fair Oaks.  The Commissioner denied the application for a number of reasons, including because there was no demonstrable need for a new linear accelerator in that area of service.  The Commissioner had previously authorized the operation of thirteen linear accelerators in HPR II, and she determined that there was no need for one more.

A few months later, Inova submitted a new application — the one at issue in this case — for a COPN authorizing a "proposed project . . . to move one of four existing linear accelerators from the campus of Inova Fairfax Hospital to the campus of Fair Oaks Hospital."  App. at 1441.  The project would involve the decommissioning of one of Inova Fairfax's older linear accelerators, thereby reducing the number of such machines at Inova Fairfax from four to three, and the relocation of that service (with the installation of a new linear accelerator) to Inova Fair Oaks.  With its proposed change, Inova pointed out, HPR II would still have thirteen linear accelerators.

During the administrative process, Reston intervened as a "good cause" party.  Id. at 635. Reston asserted various reasons why the Commissioner should not issue the COPN to Inova. The Commissioner rejected Reston's objections and issued the COPN on August 26, 2009, designating it COPN No. VA-04223.  Reston appealed to the circuit court under the Virginia Administrative Process Act (VAPA), Code §§ 2.2-4000 through -4033.  The circuit court held that Reston did not have standing and dismissed the appeal.  On appeal to our Court, we reversed and remanded the case to the circuit court for a decision on the merits.  See Reston Hosp. Ctr., LLC v. Remley, 59 Va. App. 96, 717 S.E.2d 417 (2011).  On remand, the circuit court upheld the Commissioner's decision to issue the COPN to Inova.  Reston again appealed to us.  Over

Inova's objection, the circuit court extended Reston's time to file its notice of appeal pursuant to Code § 8.01-428(C).

While the case has been on appeal, the Commissioner issued another certificate, designated COPN No. VA-04386 (issued April 19, 2013). It authorized the "[r]elocation and replacement of the existing linear accelerator located in the satellite facility at 8503 Arlington Boulevard (in Fairfax County) to Inova Fair Oaks Hospital (also in Fairfax County)." Appellant's Supp'l Br. Ex. A at 3.[3] The certificate added that the "relocation of the Arlington Boulevard linear accelerator will be in place of the linear accelerator authorized for relocation from Inova Fairfax Hospital under COPN No. VA-04223." Id.

After oral argument in this appeal, the Commissioner issued a "corrected certificate" on June 13, 2013, because "[t]he original certificate issued on April 19, 2013 did not reflect the project as specified in the letter of intent and requested in the application." Appellant's Supp'l

---

[3] Although no party has raised this issue before this Court, it appears that the application for the 2013 COPN makes inconsistent statements regarding the number of linear accelerators present at Inova Fairfax. At one point, the application notes that "Inova Fairfax Hospital is currently approved for and operates four (4) linear accelerators." R. at 988 (Appellee Inova's Reply Br. in Supp. of Mootness on remand to the circuit court, Ex. A). This is consistent with the facts presented in the administrative record for the 2009 COPN, which referenced the four linear accelerators at Inova Fairfax and never mentioned the Arlington Boulevard satellite facility. However, the next line of the application for the 2013 COPN distinguishes between the three linear accelerators "located on the main hospital campus [of Inova Fairfax]" and the one "located at a satellite campus location [on Arlington Boulevard]." Id. Then, in the next paragraph, the application references the 2009 COPN and states that it "would require Inova Fairfax Hospital to take one (1) of its three (3) units out of service." Id. Our review of the administrative record for the 2009 COPN reveals only broad references to the four units at Inova Fairfax and does not mention whether the unit that is being relocated to Inova Fair Oaks must come from the main campus or the satellite facility. Nevertheless, for reasons that are not clear from the record, Inova appeared to interpret the 2009 COPN as authorizing the relocation of a unit from the main campus of Inova Fairfax rather than the satellite facility. In response to that perceived result, Inova applied for an additional COPN to allow the main campus of Inova Fairfax to "continue to utilize the linear accelerator currently in place," and instead decommission and relocate the satellite facility's radiation therapy service to Inova Fair Oaks. Id. In any event, it is not clear why Inova distinguished between the main campus of Inova Fairfax and the satellite facility in their request for the 2013 COPN but not for the 2009 COPN.

Br. Ex. B at 1. The certificate, still designated as COPN No. VA-04386, "identifie[d] the correct project site" as "Inova Fairfax Hospital Main Campus," id.,[4] and no longer included the original certificate's language referencing "replacement" of the accelerator previously authorized to Inova Fair Oaks. Instead, the corrected certificate phrased the approved action as a "[r]elocation of the existing linear accelerator authorization" from the satellite facility to Inova Fairfax. Id. at 2; compare Appellant's Supp'l Br. Ex. A (COPN No. VA-04386 (issued Apr. 19, 2013)) with Appellant's Supp'l Br. Ex. B (Corrected COPN No. VA-04386 (issued June 13, 2013)).

While retaining appellate jurisdiction, we remanded the case to the circuit court to address whether COPN No. VA-04386 mooted any need for our review of the original COPN No. VA-04223 and whether the June 13, 2013 corrections to COPN No. VA-04386 were valid. In June 2014, the circuit court held that the case was not moot and that the corrections to COPN No. VA-04386 were valid.

## II. EXTENSION OF TIME TO FILE NOTICE OF APPEAL

We first address Inova's assignment of cross-error claiming that the circuit court erroneously extended the time for Reston to file its notice of appeal pursuant to Code § 8.01-428(C). Inova contends that the circuit court abused its discretion in granting the extension. We disagree.

Rule 5A:6(a) requires an appellant to file a notice of appeal within thirty days after the entry of the final order in the circuit court. The General Assembly enacted Code § 8.01-428(C)

---

[4] Inova informed the Commissioner in its letter of intent that it intended to "transfer" one linear accelerator from a satellite facility in Fairfax "to the Inova Fairfax Hospital Main Campus." Appellee Remley's Supp'l Br. Attach. C. The DCOPN staff report quoted Inova's application as "propos[ing] to relocate COPN authorization for the linear accelerator at the satellite campus to the main hospital campus," Appellee Inova's Supp'l Br. Ex. B at 6 n.1, and noted that "[n]o capital cost is associated with the proposed project," id. at 8.

to provide a narrow exception to this thirty-day deadline when an appellant is "not notified by any means of the entry of a final order," and the circuit court finds that the lack of notice does not result from appellant's "failure to exercise due diligence." The statute vests the discretion to grant the party leave to appeal in the circuit court, not the appellate court.

An abuse of discretion occurs "only 'when reasonable jurists could not differ'" as to the proper decision. Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006)). This highly deferential standard of review "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts — yet still remain entirely reasonable." Hamad v. Hamad, 61 Va. App. 593, 607, 739 S.E.2d 232, 239 (2013). The circuit court "has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (alteration and internal quotation marks omitted).

We apply this "bell-shaped curve of reasonability" based on our "venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Hamad, 61 Va. App. at 607, 739 S.E.2d at 239. Suffice it to say, "if nothing else," the abuse-of-discretion standard "means that the trial judge's ruling will not be reversed simply because an appellate court disagrees." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (internal quotation marks omitted), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005); see also Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997) (noting that, when applying an abuse-of-discretion standard, appellate judges do "not substitute [their] judgment for that of the trial court").

Given the unique circumstances of this case, we cannot say that the circuit court abused its discretion in granting the extension. It appears that all of the circuit court's orders during this

protracted litigation — *except* the final order that triggered the thirty-day deadline for filing the notice of appeal — had been mailed by the clerk of court to counsel of record as a matter of course. In addition, it took over a month for the draft final order to be submitted to the court, a designated judge from another circuit presided over the case pursuant to Code § 32.1-102.9, and two different clerk's offices handled the record. Though we may not have been as forgiving as the circuit court, reasonable jurists could reach different conclusions on the question whether Reston exercised due diligence under the uncommon conditions of this case. We thus defer to the circuit court's decision to extend the deadline for filing the notice of appeal under Code § 8.01-428(C).

### III. Mootness on Appeal

Prior to deciding the merits of this appeal, we must also determine whether this case has become moot because of the issuance of COPN No. VA-04386 (issued April 19, 2013 and corrected on June 13, 2013). We conclude that the case continues to present a live, justiciable controversy.

"A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Ingram v. Commonwealth, 62 Va. App. 14, 21, 741 S.E.2d 62, 66 (2013) (quoting Chafin v. Chafin, 133 S. Ct. 1017, 1019 (2013)). "'No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" Id. at 21-22, 741 S.E.2d at 66 (quoting Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013)); see also Daily Press, Inc. v. Commonwealth, 285 Va. 447, 452, 739 S.E.2d 636, 639 (2013) (noting that "a case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist"). Mootness on appeal can

occur for a variety of reasons, including settlement agreements[5] or other intervening events that overtake litigable controversies.[6]

While it is true that a case is moot when "our resolution of an issue could not possibly have any practical effect on the outcome of the matter," Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 161 (4th Cir. 2010), the burden of establishing that we lack jurisdiction rests on "the party who alleges that a controversy before us has become moot," Michigan v. Long, 463 U.S. 1032, 1042 n.8 (1983) (quoting Cnty. of Los Angeles v. Davis, 440 U.S. 625, 645 (1979)). "That is, we presume in those circumstances that we have jurisdiction until some party establishes that we do not for reasons of mootness," id., unless, of course, we *sua sponte* rebut that presumption entirely on our own, de Haan v. de Haan, 54 Va. App. 428, 436, 680 S.E.2d 297, 301 (2009) ("This Court may raise the [jurisdictional] issue *sua* sponte." (quoting Earley v. Landslide, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999))).

---

[5] See, e.g., Toms v. Allied Bond & Collection Agency, Inc., 179 F.3d 103, 104 (4th Cir. 1999) (holding that a plaintiff's "settlement extinguished [his] interest in [the] litigation," thus mooting the case); Pressley Ridge Sch. v. Shimer, 134 F.3d 1218, 1219-22 (4th Cir. 1998) (holding that, despite the parties' agreement to allow the government "to maintain an appeal" on two general regulatory issues, their settlement agreement as to "all disputed claims" mooted any actual controversy between the parties); Mattaponi Indian Tribe v. Va. Marine Res. Comm'n, 45 Va. App. 208, 210, 609 S.E.2d 619, 620 (2005) (holding that "a settlement agreed to by all litigants before the circuit court, consummated by the entry of a consent dismissal order, moots appellate review of the circuit court's earlier denial of the appellant's motion to intervene").

[6] See, e.g., Arizonans for Official English v. Arizona, 520 U.S. 43, 72 (1997) (holding that an employee's resignation from the employment at issue resulted in "changed circumstances," which "mooted the case stated in her complaint"); Lewis v. Cont'l Bank Corp., 494 U.S. 472, 483 (1990) (vacating a judgment when legislation enacted after the case began "mooted the controversy"); Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002) (explaining that a case is rendered moot "when a state court orders the same relief sought by the plaintiff in a parallel federal action"); Ross v. Reed, 719 F.2d 689, 693-94 (4th Cir. 1983) (holding that a plaintiff's release from prison mooted his challenge to certain prison regulations); Bevel v. Commonwealth, 282 Va. 468, 480, 717 S.E.2d 789, 795 (2011) (holding that a criminal appeal was moot because, after the defendant's death, "there [was] no party seeking to prosecute the appeal"); Va. Dep't of State Police v. Elliott, 48 Va. App. 551, 555, 633 S.E.2d 203, 205 (2006) (holding that a case was moot when "[t]he offended party cured the alleged illegality before it could occur").

Inova claims that this appeal is moot. Inova argues that COPN No. VA-04386 (issued April 19, 2013 and corrected on June 13, 2013) eliminated any need for us to decide whether the Commissioner properly issued the original COPN No. VA-04223 (issued August 26, 2009). After all, Inova contends, Reston never intervened in the administrative process for the 2013 COPN. According to this argument, even if we were to invalidate the 2009 COPN, the 2013 COPN would independently validate Inova's plan to move the linear accelerator to Inova Fair Oaks. The circuit court rejected this argument, as do we.

The 2013 COPN presupposes the validity of the 2009 COPN. When issuing the 2013 COPN, the Commissioner undoubtedly relied in part on the existence of the 2009 COPN, which authorized the establishment of radiation therapy services at Inova Fair Oaks and the corresponding relocation of a linear accelerator from Inova Fairfax to Inova Fair Oaks. That authorization created the need for the relocation of a linear accelerator from a satellite facility to Inova Fairfax. The clearest indication that the 2013 COPN added to rather than replaced the 2009 COPN appears in the 2013 COPN as issued on April 19, 2013, which noted that "the total authorized capital cost . . . for the relocation and replacement of a linear accelerator is included in COPN No. VA-04223." Appellant's Supp'l Br. Ex. A.

The correction issued in June 2013 further clarified that understanding by simply stating that there was "no capital cost associated with the project" authorized by the 2013 COPN. Appellant's Supp'l Br. Ex. B. Essentially, the 2009 COPN authorized the establishment of radiation therapy services at Inova Fair Oaks by the transfer of one linear accelerator from Inova Fairfax to Inova Fair Oaks and also authorized the capital cost of that project. The 2013 COPN, presuming the authorization for radiation therapy services at Inova Fair Oaks under the 2009 COPN, merely effectuates that transfer in a slightly different manner by authorizing Inova Fairfax to maintain its three current linear accelerators on the main campus and instead

- 9 -

decommission the unit at the satellite facility.  Perhaps this explains why Inova — quite understandably — has not affirmatively relinquished the 2009 COPN on the assumption that it can rely exclusively on the 2013 COPN, which Inova nevertheless claims stands incontestably on its own.

In short, if we were to invalidate the 2009 COPN, the 2013 COPN could be subject to continuing litigation because the underlying basis for the relocation authorized by the 2013 COPN would be in question.  We thus have no confidence that dismissing this appeal as moot would end the seemingly interminable litigation of the disputed location of this single piece of medical equipment.[7]  For these reasons, we decline to dismiss this appeal as moot.[8]

---

[7] Inova also asserts that the June 13, 2013 correction of COPN No. VA-04386 is an invalid "revocation of the original COPN [issued April 19, 2013]."  Appellee Inova's Supp'l Br. at 4.  Although Inova argues that "[t]he plain language of the 'corrected' June 13, 2013 COPN reflects the Commissioner's intent to effectively revoke the original April 19, 2013 COPN," Inova offers no substantive analysis to support its argument. Id. at 4-5.  On the contrary, both the Commissioner and Reston contend that the original COPN No. VA-04386 issued on April 19, 2013, contained factual errors and did not accurately reflect Inova's letter of intent to apply for the COPN or the application filed in 2012.  See Appellee Remley's Supp'l Br. at 2; Appellant's Supp'l Br. at 2-3.  Inova's Letter of Intent, submitted in 2012, clearly stated that the requested COPN would be "to transfer Radiation Therapy services (1 linear accelerator) from 8503 Arlington Boulevard, Fairfax, Virginia, to the Inova Fairfax Hospital Main Campus."  R. at 937 (Appellee Remley's Br. in Response to Inova's Mem. in Supp. of Mootness on remand to the circuit court, Ex. 5).  The application itself repeatedly characterized "the proposed project" as "relocat[ing] COPN authorization for an existing linear accelerator from an Inova Fairfax Hospital satellite location to the Inova Fairfax Hospital main campus."  R. at 1001 (Appellee Inova's Reply Br. in Supp. of Mootness on remand to the circuit court, Ex. A); see also id. at 998-99.  Thus, there was no indication in Inova's application for the 2013 COPN that it wished to invalidate the 2009 COPN and replace it entirely with the authorizations provided by the 2013 COPN.  While the 2013 COPN effectively results in the transfer of the satellite facility's linear accelerator to Inova Fair Oaks (by decommissioning the old unit at the satellite facility and purchasing a new unit for Inova Fair Oaks), the letter of intent, the application, and the DCOPN staff report all reflect that the method of accomplishing that goal is by transferring an authorized service from the satellite facility to the main campus at Inova Fairfax.  Regardless, because we find that this case is not moot under either the original or the corrected COPN No. VA-04386, we see no need to resolve the question of the validity of the corrections.

[8] If the case were truly moot, as Inova contends, one possible and perhaps advisable remedy would be to vacate the circuit court decision upholding COPN No. VA-04223 because Inova's argument that COPN No. VA-04386 independently validates the relocation approved by

- 10 -

IV. RESTON'S CHALLENGE TO THE 2009 COPN

We now turn to the primary dispute: whether the circuit court erred in holding that the Commissioner did not violate the law by issuing COPN No. VA-04223 on August 26, 2009. Before addressing that issue, we must frame the nature of our review.

A. *The VAPA Standards of Judicial Review*

"Under the VAPA, the circuit court reviews [an] agency's action in a manner equivalent to an appellate court's role in an appeal from a trial court." Mattaponi Indian Tribe v. Dep't of Envtl. Quality, 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004) (internal quotation marks omitted), aff'd in relevant part sub nom. Alliance to Save the Mattaponi v. Dep't of Envtl. Quality, 270 Va. 423, 621 S.E.2d 78 (2005). "'In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.'" Laurels of Bon Air, LLC v. Med. Facilities of Am. LIV Ltd. P'ship, 51 Va. App. 583, 591, 659 S.E.2d 561, 565 (2008) (quoting Gordon v. Allen, 24 Va. App. 272, 277, 482 S.E.2d 66, 68 (1997)).

The circuit court "has no authority under [the] VAPA to reweigh the facts in the agency's evidentiary record." Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 771, 739 S.E.2d 916, 920 (2013). The "VAPA authorizes the court to 'reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Id. (quoting Mattaponi Indian Tribe, 43 Va. App. at 706, 601 S.E.2d at 675). "Nor can the court substitute its own judgment for the agency's on

COPN No. VA-04223, if true, would render any holding on COPN No. VA-04223 an advisory opinion. See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 23 (1994) ("[V]acatur must be decreed . . . where a controversy presented for review has become moot due to circumstances unattributable to any of the parties" and "where mootness results from the unilateral action of the party who prevailed in the lower court." (internal quotation marks omitted)); Norfolk S. Ry. Co., 608 F.3d at 161 ("The customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment.").

matters committed by statute to the agency's discretion." Boone v. Harrison, 52 Va. App. 53, 62, 660 S.E.2d 704, 708 (2008).

That said, "[p]ure statutory construction" involves "a matter within the core competency of the judiciary" and thus "requires *de novo* review." Va. Emp't Comm'n v. Cmty. Alts., Inc., 57 Va. App. 700, 708, 705 S.E.2d 530, 534 (2011) (internal quotation marks omitted); see also Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634-35, 593 S.E.2d 568, 571 (2004) ("[P]ure statutory interpretation is the prerogative of the judiciary." (quoting Sims Wholesale Co. v. Brown-Forman Corp., 251 Va. 398, 404, 468 S.E.2d 905, 908 (1996))). The task of interpreting the Commissioner's enabling statutes, therefore, is not one we delegate in whole or in part to the Commissioner.

B. *Reston's Assignments of Error*

Although Reston asserts four assignments of error, they can be synthesized into three substantive arguments: (1) the issuance of the 2009 COPN was "inconsistent" with the State Medical Facilities Plan (SMFP), (2) the Commissioner failed "to explain sufficiently the basis for her decision or her departure from prior case decisions," and (3) the Commissioner's decision to issue the 2009 COPN was, on the merits, indefensible. Appellant's Br. at 3.[9]

---

[9] One of Reston's assignments of error challenges the circuit court's understanding of its standard of review of the Commissioner's decision. Reston was prudent to frame the assignment of error this way. Compare Davis v. Commonwealth, 282 Va. 339, 340, 717 S.E.2d 796, 797 (2011) (dismissing an appellant's assignment of error because it did "not address any finding or ruling of the Court of Appeals"), with Rule 5:17(c)(1)(iii) (effective May 16, 2014) (allowing an assignment of error to a trial court's decision "so long as the Court of Appeals ruled upon the specific merits of the alleged trial court error"). Even so, it is unnecessary from any practical point of view. Our *de novo* review of the circuit court's decision under the VAPA is conceptually analogous to the circuit court's review of the Commissioner's decision. The circuit court conducted no factfinding to which we must defer. Nor were there any discretionary calls made during the course of the circuit court's proceedings. And even if the circuit court had made such mistakes, the right-result-wrong-reason doctrine would require affirmance as long as there were no genuine issues of material fact to be decided. See generally Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010) (noting that "where the correct conclusion has

- 12 -

1. *The State Medical Facilities Plan*

Reston contends that the Commissioner did not comply with Code § 32.1-102.3(A), which provides that any COPN issued "shall be consistent" with the most recent applicable provisions of the SMFP. The inconsistency, Reston argues, arises from the portion of the SMFP entitled "Need for new service." 12 Va. Admin. Code § 5-230-290.[10] Subsection (A)(1) states that "[n]o new radiation therapy service should be approved unless . . . [e]xisting radiation therapy machines located in the health planning district performed an average of 8,000 procedures per existing and approved radiation therapy machine in the relevant reporting period." Id. § 5-230-290(A)(1). Reston correctly points out that, for several years prior to the issuance of the 2009 COPN, PD 8 performed less than an average of 8,000 procedures per linear accelerator. For this reason alone, Reston concludes, the Commissioner was without authority to authorize the new linear accelerator service at Inova Fair Oaks.

The flaw underlying Reston's argument is the assumption that the phrase "new radiation therapy service," as used in 12 Va. Admin. Code § 5-230-290(A)(1), includes the mere *relocation* of an existing service from one hospital to another hospital, which is owned and operated by the same company and serves patients within the same planning district. The

---

been reached but the wrong reason given," the Supreme Court of Virginia will "sustain the result and assign the right ground" (internal quotation marks omitted)); Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010) (explaining the development of the "the right result for the wrong reason doctrine" in Virginia).

[10] The Commissioner's duty to act "consistent with" the SMFP means only that her actions need to be "'compatible with' . . . or 'in general agreement with' [the SMFP] rather than 'exactly alike' or 'the same in every detail.'" Loudoun Hosp. Ctr. v. Stroube, 50 Va. App. 478, 506, 650 S.E.2d 879, 893 (2007) (quoting Chippenham & Johnston-Willis Hosps., Inc. v. Peterson, 36 Va. App. 469, 479, 553 S.E.2d 133, 138 (2001)); see also Roanoke Mem'l Hosps. v. Kenley, 3 Va. App. 599, 606, 352 S.E.2d 525, 529 (1987) (stating that "[b]oth the Code and the [SMFP] recognize that the Commissioner will exercise some discretion in issuing a [COPN] to determine whether [the Commissioner's] decision is 'consistent with' the standard in the [SMFP]").

ordinary understanding of the word "new" does not naturally lend itself to this interpretation.[11]

Though the linear accelerator service was new to Inova Fair Oaks, it was not new to Inova. Inova merely relocated the service from one hospital to another. Nor was the service new to the planning district. PD 8 had thirteen linear accelerators before the relocation and thirteen after. We thus reject Reston's reading of "new radiation therapy service," 12 Va. Admin. Code § 5-230-290(A)(1), to include the unique circumstances presented in COPN No. VA-04223.[12]

The banter over the textual meaning of the words in a statute or regulation must always be framed by the manifest legislative will underlying the law. One of the principal purposes of the Medical Care Facilities Certificate of Public Need Law, originally enacted in 1973, was "to assist in promoting the highest quality of health care at the lowest possible cost." 1973 Va. Acts

---

[11] We are aware of the adjudication officer's recommendation to the Commissioner on this issue. At one point in his report, he stated that "[t]he 8,000-treatment provision is plainly applicable to a new service" like the one intended for Inova Fair Oaks. App. at 626. He made this statement "despite" the "concurrently reasonable (but secondary) characterization" of the service as a "relocation" of a service "that would not increase PD 8's inventory of linear accelerators." Id. He nonetheless concluded that Inova's request was "generally consistent" with the threshold and "in overall harmony or general agreement with the provision (and the SMFP generally) and the public interest and purposes to which that plan is devoted." Id. Given our interpretation of 12 Va. Admin. Code § 5-230-290(A)(1), we need not dissect this view or rule upon its legitimacy. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991); see also United States ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 913 n.3 (4th Cir. 2013) (noting that although the parties did "not raise [a] particular argument," the court was "not preclude[d] in [its] consideration and application of it"). "The contrary conclusion would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court on hypothetical [legislative acts] or dubious constitutional principles, an opinion that would be difficult to characterize as anything but advisory." U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 447 (1993).

[12] We acknowledge Reston's reliance on Code § 32.1-102.3, which requires the issuance of a COPN for any "project." The definition of "project" includes, among other things, the "[i]ntroduction into an existing medical care facility of any new . . . radiation therapy . . . which the facility has never provided or has not provided in the previous 12 months." Code § 32.1-102.1. However, the question we must answer is not whether a COPN was required — it clearly was — but rather, whether the Commissioner had the lawful discretion to issue one to Inova.

ch. 419; see also 12 Va. Admin. Code § 5-230-30 (listing the "general principles" behind the COPN program and including "cost effectiveness and quality of medical services in Virginia").[13] The COPN requirement was meant to limit access to the competitive, free market only to the extent that it might endanger those legislative goals. See generally FTC v. Phoebe Putney Health Sys., 133 S. Ct. 1003, 1015-16 (2013) (interpreting a similar regulatory scheme "in light of our national policy favoring competition, . . . to reflect more modest aims" than expansive "anticompetitive conduct," even though the scheme "does limit competition in the market for hospital services in some respects"). Interpreted in light of these policy goals, the phrase "new radiation therapy service," as used in 12 Va. Admin. Code § 5-230-290(A)(1), does not include the relocation of an existing service from one hospital to another hospital, which is owned and operated by the same company and serves patients within the same planning district.

## 2. *Alleged Departure from Prior Case Decisions*

Reston also argues that the Commissioner acted arbitrarily and capriciously by issuing the COPN to Inova under circumstances that, according to Reston, have never been found previously by the Commissioner to be acceptable. The nine examples Reston gives as precedent, however, all apparently involve requests for COPNs for truly *new* services, not the relocation of

---

[13] The economic assumptions underlying Virginia's COPN law have since been questioned. See Colon Health Ctrs. of Am., LLC v. Hazel, 733 F.3d 535, 545 (4th Cir. 2013) (noting that "the Department of Justice and the Federal Trade Commission [have concluded] that certificate 'programs are not successful in containing health care costs, and . . . pose serious anticompetitive risks that usually outweigh their purported economic benefits'" (citation omitted)); Va. Senate Doc. 6, at 9 (2001) (noting that "many of the issues presumed addressed by [the 1974 federal health planning law] remain major concerns in 2000, e.g., cost containment, indigent care, quality of care, access to care, consumer involvement, distribution of services in medically underserved areas, prevention, utilization review, and education of the public in personal care and in the use of the health care system"); Va. Senate Doc. 11, at 6 (1988) (summarizing the findings of a commission organized to study the COPN law and observing that "the Certificate of Public Need law no longer serves as a viable mechanism for containing the cost of health care provided by hospitals").

*existing* services — at least no one has suggested to us otherwise. Reston acknowledges that "[t]he only possible explanation is the fact that Inova's project purportedly involves the relocation of an existing linear accelerator," Appellant's Br. at 22, but Reston rejects that explanation as a "distinction without a difference," id. at 6.

Reston's argument fails because it presupposes too much. As we explained earlier, a sensible distinction exists between issuing a COPN for a new service that expands existing capacity and a mere relocation of an existing service that does not. See *supra* Part IV.B.1. In our view, 12 Va. Admin. Code § 5-230-290(A)(1) incorporates that distinction. This point more than answers Reston's inconsistency challenge because the 2009 COPN awarded to Inova cannot be compared fairly to prior COPNs involving wholly new services that increased the inventory of medical services or machines in the relevant planning district. Reston, therefore, has not shown that the Commissioner made a "'sudden and unexplained change'" in administrative policy or "fail[ed] to take into account 'legitimate reliance on prior interpretation.'" Appellant's Br. at 19 (quoting Boyd v. People, Inc., 43 Va. App. 82, 91, 596 S.E.2d 100, 105 (2004) (Kelsey, J., concurring)).[14]

### 3. *Arbitrary & Capricious Decisionmaking*

Reston also contends that the Commissioner's decision to issue the 2009 COPN should be judicially vacated because physicians at Inova Fair Oaks who previously have treated cancer patients have had to refer them, out of necessity, to other hospitals like Reston. If Inova Fair

---

[14] Even if the Commissioner did arbitrarily make a "'sudden and unexplained change,'" Boyd, 43 Va. App. at 91, 596 S.E.2d at 105 (Kelsey, J., concurring) (quoting Smiley v. Citibank (S.D.), N.A., 517 U.S. 735, 742 (1996)), we would not necessarily freeze into perpetuity the earlier interpretation and reject out of hand the subsequent aberration. Nor would we remand the case back to the Commissioner for her to decide which of her two interpretations she likes best. Instead, the "proper judicial response to a situation like this is to jettison altogether any interpretative deference and do what appellate courts ordinarily do: decide questions of law *de novo*." Id. at 92, 596 S.E.2d at 105.

Oaks gets a linear accelerator, Reston worries that patients at Inova Fair Oaks may not need to travel to another hospital for radiation therapy and that, to a certain extent, this would reduce the revenues that Reston receives for the use by these patients of its linear accelerator. Unmoved by this argument, the Commissioner concluded that Reston would likely be able "to weather any competitive stresses that may stem from approval of the project proposed by Inova." App. at 612.[15]

The question we must answer is not whether we agree or disagree with the Commissioner's exercise of discretion on this issue, but whether she was faithful to her statutory duty to "consider" the enumerated statutory criteria for the issuance of a COPN. Code § 32.1-102.3(B). One of those factors involves "the utilization and efficiency of existing services or facilities," Code § 32.1-102.3(B)(5), while another emphasizes "[t]he extent to which the proposed service or facility fosters institutional competition," Code § 32.1-102.3(B)(4).[16] The parties offer a battery of conflicting statistics in support of their differing views on these points. We see no need, however, to pick apart the data matrices in the administrative record to answer this question.

As we have often said, "when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will

---

[15] The Commissioner's adjudication officer also rejected Reston's argument that the availability of "a linear accelerator at Fair Oaks would reduce patient volume" for radiation therapy provided by Reston and another competitor. App. at 629. The adjudication officer made a factual finding that "historical utilization data provided by [Inova] Fair Oaks reliably show another picture." Id. (footnote omitted). Given our view of the case, we need not engage this factual dispute in any detail.

[16] Reston also relies on the SMFP, which states that "new radiation therapy services" must meet certain performance criteria "without significantly reducing the utilization of existing services in the health planning district." 12 Va. Admin. Code § 5-230-290(C). For the reasons previously discussed, the unique circumstances of this case involve the relocation of an existing service rather than the initiation of a "new" service. See *supra* Part IV.B.1.

overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (quoting Vasaio v. Dep't of Motor Vehicles, 42 Va. App. 190, 196-97, 590 S.E.2d 596, 599 (2004)). "This standard recognizes the larger premise that, before any legal question can be answered, an *a priori* question must first be asked — who has the authority to decide. It is the one question that precedes all others." Boone, 52 Va. App. at 62, 660 S.E.2d at 708.

The Commissioner conscientiously considered the effect Inova's relocated service would likely have on Reston's market share. And what we have said in analogous circumstances can be said here: "While it appears the subject was not given dispositive weight, nothing in the statute requires that any specific factor be given any measurable weight, only that it be *considered* by the [agency] during the decisionmaking process." Id. at 65, 660 S.E.2d at 710. Whatever "weight that should be properly given to any specific factor" is a discretionary decision for the agency, "not the courts." Id. at 66, 660 S.E.2d at 710. It is enough to conclude, as we do, that nothing in the administrative record, taken as a whole, persuades us that "a reasonable mind would *necessarily* come to a different conclusion." Id. at 62, 660 S.E.2d at 708 (internal quotation marks omitted).

## V.

In sum, we find no abuse of discretion in the circuit court's decision to extend Reston's time to file its notice of appeal. Nor do we believe the case has been rendered moot by the issuance of COPN No. VA-04386 (issued April 19, 2013 and corrected on June 13, 2013). On the merits, we hold that the Commissioner lawfully issued COPN No. VA-04223 and that the circuit court correctly rejected Reston's challenge to the Commissioner's decision.

Affirmed.