COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Alston, O'Brien and AtLee
Argued at Fredericksburg, Virginia


MARISSA J. LEVINE, M.D., MPH,
 STATE HEALTH COMMISSIONER
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0145-18-4                      JUDGE RICHARD Y. ATLEE, JR.
                                                    OCTOBER 23, 2018
ARLINGTON MEDICAL IMAGING, LLC AND
 WILLIAM PROMINSKI, M.D.


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Victoria A.B. Willis, Judge Designate

Amanda L. Lavin, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Allyson K. Tysinger, Senior Assistant Attorney General, on
briefs), for appellant.

Ronald L. Hiss for appellees.


The State Health Commissioner[1] appeals a decision of the circuit court. The

Commissioner argues that the circuit court erred when it reversed the Commissioner's decision

to deny an application for a Certificate of Public Need ("COPN") from Arlington Medical

Imaging, LLC ("AMI") for its proposed computed tomography ("CT") scanning facility. The

Commissioner argues that the circuit court applied the wrong standard of review, improperly

admitted new evidence, and substantial evidence supports the denial of the certificate. We agree

and reverse.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Marissa J. Levine, M.D., MPH, was the State Health Commissioner at the time the
application was denied. Norm Oliver, M.D., MA, has since been appointed the Acting State
Health Commissioner.

## I. Background

### A. Statutory and Regulatory Framework

"A comprehensive regulatory system governs nearly every aspect of medical care facilities in the Commonwealth." Reston Hosp. Ctr. v. Remley, 63 Va. App. 755, 760, 763 S.E.2d 238, 241 (2014). "No person shall commence any project without first obtaining a certificate issued by the Commissioner." Code § 32.1-102.3(A). Any decision to issue a certificate must be consistent with the State Medical Facilities Plan ("SMFP"), unless the Commissioner, in her discretion, chooses to set aside the SMFP. Id. "No certificate may be issued unless the Commissioner has determined that a public need for the project has been demonstrated." Id.

To determine whether a public need has been demonstrated, the Commissioner must consider the statutory factors under Code § 32.1-102.3(B). The following factors are relevant to this appeal:

> 1. The extent to which the proposed service or facility will provide or increase access to needed services for residents of the area to be served, and the effects that the proposed service or facility will have on access to needed services in areas having distinct and unique geographic, socioeconomic, cultural, transportation, and other barriers to access to care;
>
> 2. The extent to which the project will meet the needs of the residents of the area to be served, as demonstrated by each of the following: (i) the level of community support for the project demonstrated by citizens, businesses, and governmental leaders representing the area to be served; (ii) the availability of reasonable alternatives to the proposed service or facility that would meet the needs of the population in a less costly, more efficient, or more effective manner; (iii) any recommendation or report of the regional health planning agency regarding an application for a certificate that is required to be submitted to the Commissioner pursuant to subsection B of § 32.1-102.6; (iv) any costs and benefits of the project; (v) the financial accessibility of the project to the residents of the area to be served, including indigent residents; and (vi) at the discretion of the Commissioner, any other

factors as may be relevant to the determination of public need for a project;

3. The extent to which the application is consistent with the State Medical Facilities Plan;

4. The extent to which the proposed service or facility fosters institutional competition that benefits the area to be served while improving access to essential health care services for all persons in the area to be served;

5. The relationship of the project to the existing health care system of the area to be served, including the utilization and efficiency of existing services or facilities;

6. The feasibility of the project, including the financial benefits of the project to the applicant, the cost of construction, the availability of financial and human resources, and the cost of capital;

7. The extent to which the project provides improvements or innovations in the financing and delivery of health services, as demonstrated by: (i) the introduction of new technology that promotes quality, cost effectiveness, or both in the delivery of health care services; (ii) the potential for provision of services on an outpatient basis; (iii) any cooperative efforts to meet regional health care needs; and (iv) at the discretion of the Commissioner, any other factors as may be appropriate . . . .

Code § 32.1-102.3(B).

In determining whether the project is consistent with the SMFP, the Commissioner looks to the regulations setting out the plan. Code § 32.1-102.1. Relevant here, 12 VAC 5-230-90 provides that "CT services should be within 30 minutes driving time one way under normal conditions of 95% of the population of the health planning district using a mapping software as determined by the commissioner." Furthermore,

[n]o new fixed site or mobile CT service should be approved unless fixed site CT services in the health planning district performed an average of 7,400 procedures per existing and approved CT scanner during the relevant reporting period and the proposed new service would not significantly reduce the utilization of existing providers in the health planning district. The utilization of existing scanners operated by a hospital and serving an area distinct from the proposed new service site may be disregarded in

computing the average utilization of CT scanners in such health planning district.

12 VAC 5-230-100(A).

### B. AMI's Application for a Certificate of Public Need

AMI, of which Dr. William Prominski is the sole member, applied for a COPN from the Commissioner. AMI sought to add CT services to its medical facility in Arlington County.

Both the Health Services Agency of Northern Virginia and the Health Department's Division of Certificate of Public Need ("DCOPN") reviewed the application and recommended denial. Subsequently, an independent adjudication officer conducted an informal fact-finding hearing. At the informal hearing, AMI presented testimony from a police officer that the proposed location was more than thirty minutes driving time from other CT-equipped facilities. AMI also argued that nearby facilities were over-utilized and that the under-utilized facilities in other areas of Health Planning District 8,[2] in which Arlington County is located, were irrelevant to the densely populated area near AMI's proposed location. The adjudication officer recommended denying the application, finding that Health Planning District 8 already had a surplus of CT scanners.

The Commissioner reviewed the record, adopted the findings of the adjudication officer, applied the relevant statutes and regulations, and ultimately denied the application. The Commissioner found, among other things, that the proposed project did not comply with the SMFP and that AMI did not demonstrate "that its project would meet an identified public need."

AMI appealed the decision to the circuit court, arguing that the Commissioner erred in applying the statute and that the decision was not supported by substantial evidence. Before the

---

[2] Health Planning District 8 serves the cities of Alexandria, Fairfax, Falls Church, Manassas, and Manassas Park; it also serves the counties of Arlington, Fairfax, Loudoun and Prince William. See Health Systems Agency of Northern Virginia (HSANV), About Us, http://hsanv.org/aboutus.html (last visited Oct. 18, 2018).

circuit court, AMI presented charts demonstrating drive times, calculated using Google Maps, from various zip codes in the health planning district to various CT facilities, none of which had been presented to the Commissioner. AMI also presented an email and a newspaper article that had not been in the record before the Commissioner. Despite the Commissioner's objections, the circuit court determined that the evidence was not new, but was supplemental and "merely provided additional support." The circuit court concluded that the Commissioner's application of Code § 32.1-102.1 was arbitrary and capricious as well as incorrect. The circuit court also found that denial of the application was contrary to the evidence and ordered that the COPN be issued. The Commissioner appeals.

II. ANALYSIS

A. The Circuit Court's Standard of Review

The Commissioner argues that the circuit court erred in applying a *de novo* standard of review. We agree.

"[U]nder the [Virginia Administrative Process Act], the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court." LifeCare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs., 63 Va. App. 538, 548, 759 S.E.2d 35, 40 (2014) (quoting Sch. Bd. of Cty. of York v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991)). While pure statutory construction requires *de novo* review, Reston Hosp., 63 Va. App. at 770, 763 S.E.2d at 246, "courts give 'great deference' to an agency's interpretation of its own regulations," Bd. of Supervisors v. State Bldg. Code Tech. Review Bd., 52 Va. App. 460, 466, 663 S.E.2d 571, 574 (2008). A court cannot "substitute its own judgment for the agency's on matters committed by statute to the agency's discretion." Reston Hosp., 63 Va. App. at 770, 763 S.E.2d at 246 (quoting Boone v. Harrison, 52 Va. App. 53, 62, 660 S.E.2d 704, 708 (2008)). The determination of what is "relevant to understanding public need lies

within an area of [the Commissioner's] experience and specialized competence and therefore, is entitled to great deference." Doctors' Hosp. of Williamsburg, LLC v. Stroube, 52 Va. App. 599, 609-10, 665 S.E.2d 862, 865 (2008).

Here, the circuit court determined that the Commissioner committed an error of law because she incorrectly applied Code § 32.1-102.1. That section, however, is the definitional section of the statute. In it, "State Medical Facilities Plan" is defined as "the planning document adopted by the Board of Health, which shall include, but not be limited to, (i) methodologies for projecting need for medical care facility beds and services, . . . and (iii) procedures, criteria and standards for review of applications for projects for medical care facilities and services." Code § 32.1-102.1. The "planning document adopted by the Board of Health" is the series of regulations that sets out the SMFP. Thus, this provision of the statute requires only that the Commissioner apply the SMFP regulations.

Further proving that the issue revolved around the regulations rather than the statute, the circuit court's letter opinion focused almost entirely on the ways in which the circuit court believed the Commissioner erred in applying the SMFP regulations. Rather than give deference to the Commissioner's interpretation of these regulations, the circuit court substituted its own judgment. Under 12 VAC 5-230-90, the mapping software used to calculate drive time is selected by the Commissioner. But the circuit court chose to use the software proposed by AMI, despite the fact that AMI never challenged the software before the Commissioner. See Va. Ret. Sys. v. Blair, 64 Va. App. 756, 773, 772 S.E.2d 26, 34 (2015) ("A failure of a party to raise an issue in the proceedings before the agency prohibits him from raising the issue on appeal.").

Additionally, the circuit court determined that the adjudication officer applied a higher standard to the evidence and ignored the traffic congestions, which the court deemed arbitrary and capricious. The adjudication officer, however, expressly acknowledged the traffic

conditions in Arlington County. Rather than apply a higher standard, the agency simply resolved the conflicts in the drive time evidence against AMI. See id. at 769, 772 S.E.2d at 32 ("[I]t is the job of the *agency*, as factfinder, to resolve [the] conflicts" in the evidence.).

Finally, under regulation 12 VAC 5-230-100(A), the Commissioner looks at the *average* utilization of CT scanners in the district, but the circuit court felt it would be better to exclude those scanners that were over-utilized. The language of 12 VAC 5-230-100(A) provides one type of CT scanner that may be excluded from the calculations, but it does not include those excluded by the circuit court. Because this analysis is related to the interpretation of the regulations, the circuit court should have given deference to the Commissioner's interpretation of the regulations rather than apply a *de novo* standard of review.

## B. New Evidence in the Circuit Court

The Commissioner next argues that the circuit court improperly permitted AMI to introduce new evidence that was not presented to the Commissioner. Among other things, the Commissioner points to testimony from a court reporter and a PowerPoint presentation with supporting documentation.

"On appeal to the circuit court from an administrative body the appeal is based only upon the record before the agency as if it were an appeal from the circuit court to an appellate court." Pence Holdings v. Auto Ctr., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995). Discovery is not permitted, Rule 2A:5, and additional evidence may only be taken to "resolve claims of arbitrary action or bad faith," Loudoun Hosp. Ctr. v. Stroube, 50 Va. App. 478, 509, 650 S.E.2d 879, 895 (2007).

Although there was some discussion below about the behavior of a court reporter, the circuit court did not find bias on the part of the Department of Health. Thus, there was no permissible reason to admit new evidence. AMI argues on brief that its evidence was not new

because it "raised the issue of drive time at every forum." Though the argument may not be new, the evidence used to support the argument certainly was. Before the Commission, AMI chose to use the testimony of a police officer about the drive times from AMI's proposed location to other CT facilities, focusing on Arlington County. Before the circuit court, AMI changed its approach and used Google Maps to show drive times from multiple zip codes within the health planning district to various CT facilities at different times of the day. AMI chose not to present this evidence to the Commissioner, and it was not entitled to present this new evidence at the circuit court level. The new evidence should not have been admitted.

### C. Substantial Evidence to Support the Commissioner's Decision

Finally, the Commissioner argues that the circuit court erred in finding that her decision was not supported by substantial evidence.

The sole question on factual issues is "whether there was substantial evidence in the agency record to support the agency decision." Code § 2.2-4027. This Court will reject an agency's factual finding "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Doctors' Hosp., 52 Va. App. at 607, 665 S.E.2d at 865 (quoting Tidewater Psychiatric Inst. v. Buttery, 8 Va. App. 380, 386, 382 S.E.2d 288, 291 (1989)). The reviewing court has no authority to reweigh the facts in the record. Reston Hosp., 63 Va. App. at 770, 763 S.E.2d at 246.

When reviewing a COPN application, the Commissioner must determine whether the project is consistent with the SMFP, and then apply the eight statutory factors used to determine whether a public need for the project exists. Code § 32.1-102.3. The Commissioner set out five specific reasons for her decision, including (1) that AMI's proposed project was not consistent with the SMFP and (2) that AMI had not made a solid case that the project would meet a public need. Although the circuit court stated that the Commissioner did not explain her conclusions,

- 8 -

the Commissioner "adopted the . . . findings, conclusions and recommended decisions of the adjudication officer," who provided a thorough explanation of the evidence in the record and the reasons for the decisions.

### 1. *The State Medical Facilities Plan*

The SMFP requires that "CT services should be within 30 minutes driving time one way under normal conditions of 95% of the health planning district using a mapping software as determined by the commissioner." 12 VAC 5-230-90. The report relied on by the adjudication officer and the mapping software used demonstrates that CT services are already within the required driving time of 95% of the population.[3] Though AMI presented contradictory evidence via the officer's testimony, "[i]t is not unusual for there to be conflicting evidence in contested cases, and it is the job of the *agency*, as factfinder, to resolve those conflicts." Blair, 64 Va. App. at 769, 772 S.E.2d at 32. The adjudication officer weighed the evidence and found that this evidence was "anecdotal" and insufficient to rebut the agency's data, and the Commissioner adopted this finding. Moreover, AMI's evidence, if accepted, demonstrated only that the proposed location was not within 30 minutes driving time of other locations. But the regulation looks to the population of the health planning district as a whole, not simply one location.

AMI argued, and the circuit court agreed, that the Commissioner should look only at facilities in the densely populated Arlington County, which were over-utilized. But this approach is contradictory to the language of 12 VAC 5-230-100(A), which looks to the health planning district as a whole rather than a specific area. Additionally, the language specifically looks to the *average* utilization of CT scanners. Though the reports showed that some CT facilities were over-utilized, it also showed others were under-utilized. Health Planning District

_____

[3] The DCOPN report does note that the driving time excludes "peak traffic hours." The adjudication officer, however, specifically stated that he was aware of the traffic congestion in the planning district.

8 had 54 scanners with an average of 6,455 scans per unit. The report also demonstrated an 11% decrease in CT use over a five-year period. The adjudication officer concluded that District 8 had a surplus of seven CT scanners. Given this information, the record contained substantial evidence to support the Commissioner's conclusion that AMI's project was not consistent with the SMFP.

## 2. *The Public Need Factors*

Even if the proposed project was consistent with the SMFP,[4] the evidence contains substantial evidence to support the Commissioner's conclusion that AMI's application did not demonstrate a public need. The adjudication officer provided a very thorough explanation of the evidence and his findings under each of the statutory factors in Code § 32.1-102.3(B). Among other things, the adjudication officer noted that the surplus of scanners created an overabundance of competition, which led to the under-utilization of CT scanners in the district and could affect the quality of services by "perpetuating in [Health Planning District 8] a pattern which features several underperforming outpatient CT" services. Additionally, the project was "duplicative of reviewable and existing resources." The findings also addressed AMI's unrealistic financial statement and the possible alternatives to a new CT scanner. These conclusions and findings were adopted by the Commissioner, and we cannot say that a "reasonable mind would *necessarily* come to a different conclusion." Doctors' Hosp., 52 Va. App. at 707, 665 S.E.2d at 865. Therefore, there was substantial evidence to support the Commissioner's denial of AMI's application.

---

[4] If a plan is inconsistent with the SMFP, the Commissioner may, but is not required to, issue a COPN if she makes certain findings of facts and institutes procedures to amend the plan. Code § 32.1-102.3(A); Chippenham & Johnston-Willis Hosps., Inc. v. Peterson, 36 Va. App. 469, 476-77, 553 S.E.2d 133, 136-37 (2001). The Commissioner did not do so in this case.

III. Conclusion

The circuit court erred in reversing the Commissioner and determining that AMI had sufficiently demonstrated a public need for its CT scanner. Under the correct standard of review, the record contained substantial evidence to support the Commissioner's decision to deny AMI's application for a COPN.[5] Therefore, we reverse the judgment of the circuit court and reinstate the agency decision.

Reversed.

---

[5] Because we determined that the circuit court erred in reversing the Commissioner's decision, we do not address the Commissioner's fourth assignment of error regarding the circuit court's authority to order the issuance of the COPN.